STATE, APPELLANT, *v.* KING, RESPONDENT.

(No. 1,944.)

(Submitted May 25, 1903. Decided June 1, 1903.)

*Police Officer—Failure to Make Arrest—Criminal Prosecution —Information — Constitutional Question — When Determined.*

1.    Laws of 1903, Chapter CXI, Section 1, declares that it shall be the duty of every policeman or other peace officer, upon being informed by a citizen that any offense is being or is about to be committed within such officer's jurisdiction, to immediately proceed to the place where the alleged offender is to be found, with the informant, if he so requests, and to arrest such offender, etc. *Held,* that an information against a policeman, alleging that he refused to proceed to the place where alleged offenders were to be found, was insufficient, the statute enjoining but one duty, which was to make an arrest, failure to perform which was the gist of the officer's offense.

2     A court will not pass upon the constitutionality of a statute unless it is absolutely necessary to a decision of the case.

*Appeal from District Court, Lewis and Clarke County; II. C. Smith, Judge.*

S. R. KING was informed against for a violation of official duty as a policeman in failing to make an arrest, and on demurrer to the information was discharged, from which action of the court the state appeals. Affirmed.

*Mr. James Donovan, Attorney General,* for the State.

There are three duties which may be imposed upon a peace officer by House Bill 345 by any citizen of the state, and for failure to perform any one or more of them he is guilty of a violation of said law, as follows:   (1) Upon receipt of the requisite information to immediately and expeditiously proceed to the place where the alleged offender or offenders are to be found. (2) To proceed in company with the informant, if he so requests.   (3) To arrest the alleged offender or offenders wherever they may be found.   In the present information, the defendant is charged with a neglect to perform the first of these duties only, and that offense is clearly and without ambiguity stated in the information.   It cannot be urged that the information is bad for failure to charge that the defendant refused to make an arrest, for, as a matter of fact, he did not refuse to make an arrest, except by refusing to go to the place where the arrest might be made.   By refusing to go to such place he clearly violated his duty as an officer, and under the provisions of said House Bill 345 liable to the penalty prescribed in Section 2 thereof.

Constitutional provisions have not the slightest bearing upon the information in this case, although they might have if the information charged the officer with a refusal to make an arrest, or if the question were raised by a person who might have been arrested by such officer, as, for instance, in *habeas corpus* proceedings. (*Nelson* v. *People,* 33 Ill. 397.)

The question of the constitutionality of a law cannot be raised by anyone not having an interest in the matter, or not being in point of fact affected by the act. (Cooley on Const. Lim., 196, and cases cited in note 3 ; 6 Am. & Eng. Ency. Law, p. 1090.)

A question involving the constitutionality of a statute should be determined only when it is impossible to dispose of the case on its merits otherwise, and a court will be especially reluctant to investigate or determine the constitutionality of a statute on preliminary motions　＊　＊　＊." (6 Am. & Eng. Ency Law, p. 1084, and cases cited in note 5 ; see, also, Cooley on Const. Lim., p. 196; *Nelson* v. *People,* 33 Ill. 390; *State* v. *Curler,* 67 Pac. 1075 (Nev.) ; *MacGinnis* v. *Davis,* 65 Pac. 364 (Ida.)

On the prosecution of an officer for accepting a bribe for omitting to seize gambling devices, the officer cannot question the constitutionality of the statute authorizing the destruction of the property. (*Newman* v. *People,* 23 Colo. 300, 47 Pac. 278.)

But assuming that the question can be raised by the defendant in this case by demurrer to the information, and conceding, for the sake of argument, that House Bill 345 is in conflict with the constitutional provisions invoked, in so far as said bill makes it the duty of the officer "to arrest such offender or offenders wherever they may be found," still we maintain that the bill is unconstitutional only to the extent that it is repugnant to the constitution.

Where part only of a statute or section is unconstitutional that part only is void, unless the other provisions are so dependent or connected that it cannot be presumed the legislature would have passed one without the other. (Sedgwick, Constr.

St. & Const. Law, p. 413, and cases cited; Sutherland, St. Constr. Sec. 169; *People* v. *Hill,* 7 Cal. 97; *Nelson* v. *People,* 32 Ill. 390; *Commonwealth* v. *Hitchings,* 5 Gray, 482; *Mayor* v. *Dechart,* 32 Md. 369; *Mobile, etc. R. R.* v. *State,* 29 Ala. 573; *Lynch* v. *Steamer Economy,* 27 Wis. 69; *State* v. *Wheeler,* 25 Conn. 290; 6 Am. & Eng. Ency. Law, p. 1088.)

"With the wisdom or expediency of a law the judiciary has nothing to do; such questions address themselves solely to the law-making department of the government." (6 Am. & Eng. Ency. Law, p. 1086.)

When the statute is otherwise free from objections on constitutional grounds, the courts cannot avoid its application and enforcement because it is absurd or unreasonable, nor because, in their judgment, it is an unwise enactment. (*Ibid.,* citing: *Flint River Steamboat Co.* v. *Foster,* 48 Am. Dec. 248; *Merchants' Union Barb Wire Co.* v. *Brown,* 18 Rep. 591; see, also, Cooley, Const. Lim. p. 220.)

It is not within the province of the judiciary to inquire into the motives actuating the law-making body. (Cooley, Const. Lim. p. 220; 6 Am. & Eng. Ency. Law, p. 1087, and cases cited in note 5; *Ex parte Newman,* 9 Cal. 502; *McCulloch* v. *State,* 11 Ind. 424; *Stockton, etc. R. R. Co.* v. *Stockton,* 41 Cal. 147.)

If it be argued that it would be a vain thing to require an officer to proceed to the place where the offense was being committed without making it his duty to arrest the offenders if he should find them, and that the legislature would never have imposed that duty upon the officer without also requiring him to make an arrest, and that, therefore, the act in question is not separable, then the reply is that when the officer reaches the point where the breach of the peace is alleged to be occurring, if he finds that his information is true and that the offense is being committed at that time, or is about to be committed, it is then his duty, under Section 1632, to arrest the offenders without a warrant; and for a failure to make an arrest under each circumstance he is punishable, under Section 270, Penal Code, (3 Cyc. Law, p. 883, and cases cited in note 78.)

By the use of the word "arrest" the legislature undoubtedly intended it in its legal significance. The constitutional provisions cited do not contain the word "arrest," but use the words "unreasonable searches and seizures." The word "arrest" is defined by Section 1630, Penal Code, as "taking a person into custody in the case and in the manner authorized by law." That section further provides that "an arrest may be made by a peace officer or by a private person." Substituting for the word "arrest," as used in the statute under consideration, the definition of that term, we find that by House Bill 345 it is made the duty of the peace officer "to take into custody in the manner authorized by law such offender or offenders wherever they may be found." The law in question does not pretend to define either the case or the manner in which the arrest shall be made. It does not authorize, or pretend to authorize, the officer to arrest for an offense which has been committed, unless, of course, such offense is a felony and he has reasonable grounds for suspecting the person arrested to be the offender. There is no intent apparent on the part of the legislature to authorize or require the officer to arrest a person who may be pointed out by the informant because the informant may not accompany the officer, and if he does accompany the officer it is only for the purpose of guiding him to the place where the offense is being committed or about to be committed.

The presumption of a legislative intent to violate the constitution is never to be assumed if the language of the statute can be satisfied by a contrary construction. The application of this rule requires that wherever a statute is susceptible of two constructions, of which one would make it unconstitutional and the other constitutional, the latter is to be adopted. (Endlich, Constr. St., 178, and cases cited.)

Laws are presumed to be passed with deliberation and with knowledge of all existing laws on the subject. (Sutherland, St. Const., Sections 137 and 333.)

In interpreting any clause of a statute it should be construed in connection with existing laws and should be interpreted in

the light of the objects and purposes that the legislature had in view in its enactment. (*Ter.* v. *Comm'rs Cascade Co.,* 8 Mont. 407; see, also, Section 15, Political Code.)

It will be presumed in construing a statute that the legislature did not intend it to have an effect which would have rendered it unconstitutional. (*Gillette* v. *Hibbard,* 2 Mont. 415.)

Every presumption is in favor of the constitutionality of a legislative enactment, and the judicial department will be justified in pronouncing it unconstitutional only when it becomes a manifest usurpation of power. (6 Am. & Eng. Ency. Law, p. 1086, and cases in note 1; Cooley, Const. Lim., p. 218.)

The power of the judiciary to declare a statute unconstitutional should never be exerted except where the conflict between it and the constitution is palpable and incapable of reconciliation. (*Stockton, etc. R. R. Co.* v. *City of Stockton,* 41 Cal. 147.)

The unconstitutionality of a statute must be clear and manifest before a court should declare it, so that where any reasonable doubt exists as to its constitutionality it should be upheld. (6 Am. & Eng. Ency. Law, p. 1085; *People* v. *Van Gaskin,* 5 Mont. 352; *People* v. *Ry. Co.,* 35 Cal. 606; *Ex parte Newman,* 9 Cal. 502.)

"An intention to take away or destroy individual rights is never presumed, and to give effect to a design so unjust and so unreasonable would require the support of the most direct and explicit affirmation declarative of such intent." (6 Am. & Eng. Enc. Law, p. 924.)

*Messrs. Nolan & Loeb,* for Respondent.

At common law, as a general rule, an arrest could not be made, without warrant, for an offense less than felony, except for breach of the peace. (3 Cyc., 880, citing: *Robertson* v. *State,* 29 So. 535; *Commonwealth* v. *Wright,* 158 Mass. 149, 33 N. E. 82, 35 Am. St. Rep. 475, 19 L. R. A. 206; *Scott* v. *Eldridge,* 154 Mass. 25, 27 N. E. 677, 12 L. R. A. 379; *Com-*

*monwealth* v. *O'Connor,* 7 Allen, 583; *Matter of Way,* 41 Mich. 299, 1 N. W. 1021; *Quinn* v. *Heizel,* 40 Mich. 576; *Butolph* v. *Blust,* 5 Lansing, 84; *King* v. *Poe,* 15 L. T. Rep. N. S. 37; 3 Cyc., 881, and cases cited.)

A peace officer, in the light of the constitutional provisions (Article IV of the Amendments to the U. S. Constitution; Section 7, Article III, Constitution of Montana), has no right to make an arrest without a warrant upon information or mere suspicion that a misdemeanor has been committed, and a statute which directs this to be done by a peace officer and provides penalties for his failure so to do, is unconstitutional and cannot be upheld. (*In re Kellam,* 55 Kansas, 700, 41 Pac. 960; *Pinkerton* v. *Verberg,* 78 Mich. 573, 18 Am. St. Rep. 473; *Statenburg* v. *Frazer,* 16 Appeal Cases (D. C.), 229; *People* v. *Glennon,* 74 N. Y. Supp. 79; *Pickett* v. *State,* 25 S. E. 608; Black's Const. Law, pp. 435, 440; Cooley's Const. Lim. (6th Ed.), 364.)

MR. COMMISSIONER CLAYBERG prepared the opinion for the court.

Information was filed against the respondent in the district court of Lewis and Clarke county, by which it was attempted to charge him with a violation of official duty, in the following language: "[Title of court and cause.] In the district court of the First judicial district of the state of Montana, in and for the county of Lewis and Clarke, on this, the 7th day of April, A. D. 1903, in the name and on behalf and by the authority of the state of Montana, S. R. King is accused by the county attorney of Lewis and Clarke county, Montana, by this information, of the crime of neglect of duty as peace officer, committed as follows: That at the county of Lewis and Clarke, in the state of Montana, on or about the 26th day of March, A. D. 1903, and before the filing of this information, the said S. R. King, who was then and there a peace officer, to-wit, a special policeman of the city of Helena, said county and state, and while the

said S. R. King was on duty as such peace officer, was informed by one R. A. Barret, who was then and there a citizen of the state of Montana, that an offense against the laws of the state of Montana, to-wit, the crime of conducting a gambling game, was being committed within the limits of such officer's jurisdiction, to-wit, at that certain public place known as the Capital Music Hall, in the said city, county, and state; that the said S. R. King did, then and there, willfully and wrongfully fail, neglect, and refuse to immediately and expeditiously, or at all, proceed to the said Capital Music Hall, or to the place where said alleged offender or offenders were to be found; all of which is contrary to the form, force, and effect of the statute in such case made and provided, and against the peace and dignity of the state of Montana. Lincoln Working, County Attorney of Lewis and Clarke County, Montana."

Respondent interposed a demurrer to such information upon three separate grounds, viz.: (1) That the facts stated do not constitute a public offense; (2) that the Act of the Legislature under which the information was filed violated the Constitution of the United States; (3) that such Act violated the Constitution of the state. This demurrer, after argument, was sustained generally, the respondent discharged, and his bond exonerated. From this action of the court the state appeals.

It was conceded by counsel for both parties, in their briefs and in the argument, that the information was filed under the provisions of House Bill 345, enacted by the last legislative assembly (Laws of 1903, Chapter CXI), and its sufficiency must therefore be tested by the provisions of that Act, and none other. So much of this Act as is important to the consideration of the questions involved in this appeal is as follows:

"Section 1. It shall be the duty of every sheriff, undersheriff, deputy sheriff, constable, city marshal, chief of police, city detective, policeman, or other peace officer, upon being informed by any citizen of this state that any offense against the laws of this state is being committed, or is about to be commit-

ted, by any person or persons, within the limits of such officer's jurisdiction, to immediately and expeditiously proceed to the place where the alleged offender or offenders are to be found, in company with the informant, if he so requests, and to arrest such offender or offenders wherever they may be found."

The first question is whether the information states a public offense, under the terms of the above Act. We find upon examination of the Act that it attempts to impose an official duty on the part of peace officers, and provides a punishment for neglect or violation of the same. What is the duty thus imposed, and is a violation of such duty alleged in the information?

A careful reading discloses that the Act seeks to impose the duty upon peace officers, when "informed by any citizen of this state that any offense against the laws of this state is being committed or is about to be committed, * * * to immediately and expeditiously proceed to the place where the alleged offenders are to be found," and to arrest them.

It is perceived that the duty is not alone to proceed "immediately and expeditiously to the place where the alleged offenders are to be found," but also to arrest them. Were it not for the insertion of the words "immediately and expeditiously" the only duty imposed would be the arrest, because of the impossibility of making an arrest without going to the place where the offenders are to be found. These words evidently were inserted only for the purpose of compelling prompt action on the part of the officer.

Counsel for the state argues that this Act imposes three several and distinct duties upon peace officers, as follows: "(1) Upon receipt of the requisite information, to immediately and expeditiously proceed to the place where the alleged offender or offenders are to be found; (2) to proceed in company with the informant, if he so requests; (3) to arrest the alleged offender or offenders wherever they may be found." We cannot agree with counsel's contention. We are firmly of the opinion that the purpose of the statute is to provide for the arrest of the offender, and the making of such arrest is the ultimate duty im-

posed.   This duty consists of several steps or acts, and these steps or acts are each and all parts and portions of this ultimate duty.   None of them are separate or distinct duties in themselves, and therefore a violation of one or more of them, except possibly the final one, can be punished only upon an alleged violation of the duty to arrest.   The public offense declared by the statute is the violation of this ultimate duty.

It appears from the information that the violation of duty charged is "that the said S. R. King did then and there willfully and wrongfully fail, neglect, and refuse to immediately and expeditiously, or at all, proceed to the Capital Music Hall, or to the place where said alleged offender or offenders were to be found."   This is not sufficient, because it only charges a violation of one of the steps preliminary to the ultimate duty. We are therefore clearly of the opinion that the facts stated in the information do not constitute a public offense, and that the demurrer was properly sustained.

We shall not consider the questions raised as to the constitutionality of the Act.   It is well-settled law that a court will not pass upon the constitutionality of any Act of the legislature unless it is absolutely necessary to a decision of the case.   It is not necessary here, and we do not even intimate an opinion upon this question.

We are of the opinion that the demurrer was properly sustained, and that the judgment of the court below should be affirmed.

PER CURIAM.—For the reasons stated in the foregoing opinion, the judgment of the lower court is hereby affirmed.