FIRST NATIONAL BANK OF PLAINS, RESPONDENT, *v.* SANDERS COUNTY, APPELLANT.

(No. 6,530.)

(Submitted June 24, 1929. Decided July 13, 1929.)

[279 Pac. 247.]

Cause submitted on briefs of Counsel.

*Mr. L. A. Foot,* Attorney General, *Mr. T. H. MacDonald,* Assistant Attorney General, and *Mr. Marshall Murray,* County Attorney of Sanders County, for Appellant.

*Mr. Frank Woody,* for Respondent.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

In 1927 the plaintiff bank returned to the assessor of Sanders county a statement showing that its bank shares, after deducting real estate owned by the bank, were, for the purpose of taxation, of the aggregate value of $26,525. All the statutory requirements were followed in the assessment of the property and the levy of taxes thereon. As required by statute the bank shares were placed in class six and the taxes were computed thereon for state, county, school and municipal purposes on the basis of forty per cent of the assessed value thereof. The amount of the tax was $756.85. After computing and extending the taxes the county clerk delivered the assessment-book to the treasurer of Sanders county whose duty it became to collect the taxes shown upon the face of the book to be payable. The treasurer in due time notified the plaintiff that its taxes in the amount aforesaid were payable, and that plaintiff might pay one-half thereof prior to November 30, 1927, at 5 P. M., and the remaining one-half prior to May 31, 1928, at 5 P. M.

On November 29, 1927, plaintiff paid to the treasurer of Sanders county the first half of the taxes so assessed and levied, the amount being $378.43. The payment was made without protest, without question. But in December, 1927, the supreme court of the United States in *Commercial National Bank of Miles City* v. *Custer County,* 275 U. S. 502, 72 L. Ed. 395, 48 Sup. Ct. Rep. 155, reversed our decision in that case (76 Mont. 45, 245 Pac. 259), holding that upon the fact condition presented there had been a discrimination, which was permitted by our Classification Act, against the plaintiff Commercial

National Bank of Miles City. In other words, the decision of the court of last resort held, in effect, that our Classification Act as it then existed (secs. 1999, 2000, Rev. Codes 1921) permitted a discrimination against the taxation of shares of national banks within the purview of section 5219, Revised Statutes of the United States, as amended (U. S. Code, Anno., Title 12, sec. 548).

In May, 1928, the state board of equalization, evidently assuming that other national banks in Montana could make showings similar to that made by the Commercial National Bank of Miles City, in an attempt to prevent the escape of the shares of national banks in Montana from taxation altogether, issued a communication to all county treasurers, saying in effect that "taxes on shares of stock of national banks should be computed on a basis of 7% instead of 40% as provided in our Classification Law"; and directing them "to strike from the assessment of each national bank in your county the amount by which the second installment of 1927 taxes levied against their stock exceeds the amount of such taxes when computed on a basis of 7%."

Thereafter plaintiff tendered to the treasurer of Sanders county $132.47 "In payment of the second half of the taxes on said bank shares, being the amount of taxes thereon computed on a 7% basis," but the treasurer refused to accept that amount and demanded $378.42, being the sum due as shown by his books. The plaintiff then paid him $378.42 under protest. On June 15, 1928, plaintiff filed with the board of county commissioners of Sanders county an application for refund of taxes, wherein it set forth, *inter alia*, that it had paid the first half of the taxes on November 29, 1927; that the state board of equalization had made the "order" above mentioned; that plaintiff had tendered the sum of $132.47 upon the second payment which the treasurer refused, and plaintiff had then paid the $378.42 under protest; that the "total amount of lawful taxes" for the year 1927, computed on a basis of seven per cent of the assessed value of the shares is $132.47, but the bank was compelled to pay $756.85, being

the full amount of taxes thereon computed on a forty per cent basis and that of the amount so paid $624.38 "was illegal and unlawful" and said amount was erroneously and illegally collected by the treasurer; whereupon plaintiff alleged it was entitled to have the whole sum of $624.38 refunded to it, in accordance with the provisions of section 2222, Revised Codes of 1921. Upon consideration the board allowed the claim for $245.95 "for the reason that second half of 1927 taxes was paid under protest according to law," and denied the application in so far as it related to the first half, for the reason that it was not paid under protest and no action to recover was commenced within the statutory time.

In September following, the plaintiff commenced this action to recover of the defendant the sum of $378.42. The case was brought upon the theory that the taxes upon the shares should have been computed upon the seven per cent basis and not upon the forty per cent basis. It is alleged in the complaint that the county clerk "in computing the taxes against the plaintiff's said shares of bank stock, erroneously and illegally considered and treated said shares of bank stock as being and constituting property of the sixth class * * * and erroneously and illegally computed the taxes thereon" upon the forty per cent basis; and it is alleged that the property was at all times of the fifth class and that the taxes thereon should rightfully, lawfully and properly have been computed thereon on the seven per cent basis.

The defendant pleaded, in separate defenses, that the November payment was made voluntarily and without objection by the plaintiff; that the same was not paid under protest or duress or compulsion of any kind; that no action was taken by injunction to restrain or prevent the collection of the tax or any portion thereof; that the plaintiff did not present or file a claim for the refund of the taxes as required by section 4605 of the Revised Codes; that the plaintiff knew and understood all the facts relating to its liability for taxes upon the property and its liability or nonliability for the payment of the taxes was capable of determination by the plaintiff, and the

facts and the law affecting the same were available to and well known to the plaintiff; that after the taxes were paid the plaintiff failed, until the filing of this action, to take any steps to contest or recover the same and allowed the taxes so collected to be used and expended by the defendant for county purposes, except the portion thereof payable to the state of Montana, which was in fact turned over to and paid to the state, and the portion thereof payable to school districts of the county was turned over to and paid to the school districts and expended for the purposes for which they were collected, by reason of which the defendant pleaded the plaintiff is estopped from recovery.

Plaintiff replied at length, alleging in substance that when it made the November payment it believed and was justified in believing, under the decisions of this court, the tax was legal and valid, but by reason of the decision of the supreme court of the United States in *Commercial National Bank* v. *Custer County* the tax on a higher percentage of value than seven per cent of the assessed value thereof was illegal and void. Other denials need not be mentioned.

Upon the trial the court adopted the plaintiff's theory that a recovery of the amount sought was warranted under the provisions of section 2222, Revised Codes of 1921, and entered judgment for plaintiff. From that judgment the defendant has appealed.

As the author observes in Cooley on Taxation, 4th edition, section 1276, the right of a taxpayer to recover taxes paid where the tax is invalid "is more or less involved and the subject of some conflict in the decisions. The right may depend on (1) whether the action is against the state, subdivision of the state, or tax collector, (2) whether the tax or the levy or assessment is such a one as to be invalid, (3) whether the payment is voluntary or compulsory, (4) whether a statute regulates or affects the right to recover, etc. It must be kept in mind that the governing rules in some states differ more or less from such rules in other states, and that while the rules relating to recovery back of payments other than

taxes are for the most part applicable, they do not necessarily always apply equally well to recovery of taxes paid."

After a laborious consideration of the authorities cited by opposing counsel, and many others, we found ourselves in a maze of conflicting decisions and principles. While a few states have statutes bearing some similarity to our own, by reason of important differences in the statutes themselves, differences in the relation of one statute to another, and dissimilar conditions in the matter of enactment and amendment, we have not found the decisions of any state adequate to the decision of this case. We therefore have concluded to decide the proposition submitted in the light of our own history and conditions.

The basis of plaintiff's case is that the levy of taxes against the bank stock was illegal. To fortify this position plaintiff's counsel quotes the following from *State ex rel. Banking Corporation* v. *Mady,* 83 Mont. 418, 272 Pac. 691: "The classification law placing national bank stock in class 6 and money coming into competition with the business of national banks in class 5 contravenes the provisions of section 5219. To that extent the classification law was and is invalid; it is not lawful to tax national bank stock on the forty per cent. basis." It might be more accurate to say that plaintiff's counsel contends that the levy and collection of the tax is illegal to the extent of the difference between the forty per cent and the seven per cent basis of assessment. In other words, a part of the tax was illegal, or unlawful. The word "illegal" is synonymous with "unlawful."

Whether, the facts and circumstances considered, plaintiff was entitled to recover under section 2222 is the determinative question.

The section came into our statutes as a part of the first measure passed after the adoption of the Constitution. It appears as section 145 of "An Act Concerning Revenue," approved March 6, 1891 (Laws 1891, p. 117) and reads as follows: "Any taxes, per centum, and costs, paid more than once or erroneously or illegally collected, may by order of the

Board of County Commissioners be refunded by the County Treasurer, and the State's portion of such tax, percentage and costs, must be refunded to the county, and the State Auditor must draw his warrant therefor in favor of the county upon approval of the amount by the State Board of Examiners." As a part of the same Act section 204 reads: "No injunction must be granted by any Court or Judge to restrain the collection of any tax or any part thereof, nor to restrain the sale of any property for the non-payment of taxes, except: 1. Where the tax, or the part thereof sought to be enjoined, is illegal, or is not authorized by law. 2. Where the property is exempt from taxation."

The Code Commission recommended to the Fourth Legislative Assembly these two sections with amendments for adoption as a part of the Political Code. From section 145 they omitted the words "upon the approval of the amount by the State Board of Examiners," and to subdivision 1 of section 204 they added: "If the payment of a part of a tax is sought to be enjoined, the other part must be paid before an action can be commenced." The sections were adopted as recommended, and became, respectively, sections 3913 and 4023 of the Political Code.

During the session of 1895 there was enacted, approved March 18, 1895, an Act relating to the "Unlawful Levy and Collection of Public Revenue." Section 1 thereof became section 4024 of the Political Code, reading as follows: "That in all cases of levy of taxes, licenses or other demands for public revenue, which is [are] deemed unlawful by the party whose property is thus taxed or from whom such tax or license is demanded or enforced, such party may pay under protest such tax or license, or any part thereof deemed unlawful, to the officers designated and authorized by law to collect the same; and thereupon the party so paying or his legal representative may bring an action in any court of competent jurisdiction against the officer to. whom said tax or license was paid or against the county or municipality on whose behalf the same

was collected, to recover such tax or license or pay any portion thereof paid under protest."

A companion section of the Act, designated section 4025 of the Political Code, provided the method of refunding the taxes paid under protest when fixed by judgment, and another companion section (4026, Political Code) declares: "The remedy hereby provided shall supersede the remedy of injunction and all other remedies which might be invoked to prevent the collection of taxes or licenses alleged to be irregularly levied or demanded, except in unusual cases where the remedy hereby provided is deemed by the court to be inadequate." (Sections 4025 and 4026 appear in the Revised Codes of 1921 as sections 2271 and 2272.)

Section 5185 of the Political Code, approved March 13, 1895, provided: "That if any of the Acts or parts of Acts herein enumerated are in conflict with, or are inconsistent with, any Act or Acts passed by the fourth legislative assembly of the state of Montana, the Acts or parts of Acts passed by the fourth legislative assembly shall be considered and construed as repealing such Acts or parts of Acts herein enumerated." Accordingly, to the extent that sections 4024 and 4025 were in conflict or were inconsistent with section 3913, to that extent section 3913 was repealed. (*Western Ranches* v. *Custer County*, 28 Mont. 278, 72 Pac. 659.) Nevertheless, ever since 1895, section 3913 has been carried forward without change in phraseology and it now appears as section 2222, Revised Codes of 1921.

Section 4024 has a different, and an informative, history. It was amended by the Ninth Legislative Assembly (Session Laws 1905, Chap. 108, p. 303) which added thereto this sentence: "The tax so paid under protest shall be held by the county treasurer and no part thereof paid to the state treasurer until the determination of any action brought for the recovery thereof." This was followed with a section numbered 4024A (Laws 1905, pp. 304, 305) which appeared in the Revised Codes of 1907 as section 2743, and, as amended in 1909 (Laws 1909, p. 202) is section 2270, Revised Codes of

1921. Section 4024, as it existed originally, with the words above quoted added thereto, became section 2742 of the Revised Codes of 1907. That section was amended by the Eleventh Legislative Assembly which added the provision "that any action to recover any tax paid under protest shall be commenced within sixty days after the thirtieth day of November of the year in which such tax was paid." (Laws 1909, pp. 201, 202.) (A further amendment attempted by the Eleventh Assembly was declared unconstitutional: *Dolenty v. Broadwater County*, 45 Mont. 201, 122 Pac. 919.)

As amended in 1909 (leaving out the unconstitutional feature) the section became 2269, Revised Codes of 1921. In 1925, section 2269 was amended by the Nineteenth Legislative Assembly for two purposes: first, to meet the condition brought about by statutory provisions respecting the semi-annual payment of taxes, and, second, to keep money paid under protest intact until the determination of the controversy. (Chap. 142, sec. 1, Laws of 1925.) In this last amendment we see the development by the legislature of an administrative policy that began in 1905. Section 4024 originally did not make any provision respecting the disposition of money paid under protest, which for many reasons proved embarrassing to county treasurers and boards of county commissioners. A portion of the money, if lawfully levied and collected, was the property of the state. If a portion of the money paid under protest were remitted to the state treasurer before the end of the controversy, and the taxpayer prevailed, it required an Act of the legislature to refund the money. It was for this reason that the legislature in 1905 added the provision declaring that no part of the money should be paid to the state treasurer "until the determination of any action brought for the recovery thereof." But the money went into the general fund of the county, and the general fund was all too frequently in a state of exhaustion.

And, as we have seen, the legislature in 1909 provided that actions to recover money paid under protest must be commenced within sixty days after the thirtieth day of November.

We now come to the controlling amendment of 1925. ·It retains the salient features of the section as enacted by the Ninth Assembly in 1905 respecting the payment of taxes under protest and the recovery thereof by suit, provides that suit to recover the same "shall be commenced within sixty days after the date of the payment of the same," and contains this significant provision: "All such license and taxes, when so paid under protest, shall be deposited by the treasurer of the county or municipality to the credit of a special fund to be designated as Protest Fund, and no part thereof shall be paid over to any officer, or placed in any other fund or used for any purpose whatever, but the whole thereof shall be retained in such Protest Fund until the final determination of any suit or action to recover the same." Then follow procedural directions as to the disposition of the money in case no suit be brought, or if suit ensue, upon its termination.

In the meantime section 2222 has remained unchanged. In view of the course of the legislative assembly, beginning with the special Act of 1895 and ending with the comprehensive amendment of 1925, it is unreasonable to believe that it ever was in the thought of the legislature that section 2222 had reference to unlawful levies or moneys collected upon unlawful levies. It must have been the thought of the legislature, as it was of this court, as we shall see, that the equitable remedy provided by section 4023 and the legal remedy provided· by section 4024 of the Political Code were exclusive in respect to an unlawful, or a void, levy of taxes. Otherwise would it be reasonable to suppose that the legislature would not also have amended 2222? That portion of the section which assumes to provide for a refunding of the state's share of taxes returned to the taxpayer is inoperative. As we have seen, the Code Commission eliminated the phrase, "upon the approval of the amount by the Board of Examiners," from the original text. Whether this was because the approval of the state board of examiners was implied is a mere speculation, but neither the auditor nor the board could lawfully follow the statutory

direction in the absence of legislative appropriation. (*In re Pomeroy*, 51 Mont. 119, 151 Pac. 333.)

"All taxes levied for state purposes shall be paid into the state treasury, and no money shall be drawn from the treasury but in pursuance of specific appropriations made by law." (Const., Art. XII, sec. 10.) "No money shall be paid out of the treasury except upon appropriations made by law, and on warrant drawn by the proper officers in pursuance thereof, except interest on the public debt." (Id., Art. V, sec. 34.)

We do not overlook the fact that this defect in section 2222 to which we have alluded affects the recovery by the county from the state of moneys which the county has paid the state and which the county is obliged to refund. This simply demonstrates the necessity for legislative action to cure the defect to the end that the county treasury may be speedily reimbursed in such cases; that is, in those cases to which section 2222 properly applies.

Sections 4023 to 4026, inclusive, of the Political Code first came under the scrutiny of this court in the case of *Cobban* v. *Hinds*, 23 Mont. 338, 59 Pac. 1. In that case the plaintiff sought an injunction to prevent the county treasurer from selling property for delinquent taxes. The court found plaintiff's case insufficient to warrant the granting of the equitable remedy. Mr. Justice Pigott, in the course of the opinion, observed: "Sections 4023 to 4026, inclusive, of the Political Code, prohibit courts and judges from enjoining the collection of any tax, and from restraining the sale of the property for nonpayment of any tax, except in those instances where the tax is illegal, or not authorized by law, or where the property is exempt from taxation, and provide the means and remedies whereby the rights of persons who deem the taxes irregularly or improperly demanded of the owners, or sought to be enforced against the property, may be guarded and protected, and of these remedies the plaintiff, if injured, may avail himself."

In *Western Ranches* v. *Custer County*, supra, the tax complained of was declared illegal. In discussing whether section

4024 afforded an adequate remedy the court said it should be read together with section 4026, and quoted with approval the following from *Western Ranches* v. *Custer County*, 89 Fed. 577, wherein these very sections were under consideration: "These sections provide a remedy for the collection of money paid for or on account of an illegal tax to the treasurer or tax collector of any county or municipality of this state * * * . This is a special statute, and is intended to give an exclusive remedy, except in unusual cases, where there is a dispute as to the legality of the tax between a taxpayer and a county or municipality. (End. Inter. St., sec. 154.) When a special and exclusive remedy is given by a statute, we look alone to it, and are required to follow it." We continued: "This is in accordance with our views, and we think the plaintiff pursued the proper remedy in paying the taxes under protest, and afterwards bringing suit to recover them."

In *Montana Ore Purchasing Co.* v. *Maher*, 32 Mont. 480, 81 Pac. 13, the court had under consideration sections 4023 to 4026, inclusive. That was a case in which plaintiff sought an injunction to prevent a sale of its property for taxes. Commenting upon the *Custer County Case* (28 Mont., p. 278, 72 Pac. 659), Mr. Justice Holloway, for the court, observed that in discussing the remedy in that case we might better have said the plaintiff pursued *a* proper, rather than *the* proper remedy, being of the opinion that under the facts in the *Custer County Case* either remedy was available to plaintiff. We think the observation good. As was said by Mr. Chief Justice Brantly in *Barnard Realty Co.* v. *City of Butte*, 50 Mont. 159, 145 Pac. 946, "the assessment being wholly illegal, because without authority, its validity may be questioned by any available method." In other words, the plaintiff might have challenged its validity by injunction or have paid the tax under protest and thereupon have brought suit to recover it. In the *Maher Case* the court approved what had been said in *Cobban* v. *Hinds,* supra, respecting the operation

of sections 4023 to 4026, inclusive, and during its discussion said: "A consideration of sections 4023 and 4026 leads us to believe that the phrase 'irregularly levied or demanded' was used by the Legislature advisedly, and as prescribing the limits wherein the statutory remedy is exclusive, as distinguished from those cases of illegal taxes the collection of which may be restrained by injunction. In other words, if the action of the assessor or board of equalization was such that the tax complained of is manifestly void under any circumstances, injunction will lie to restrain its collection; but, if the error complained of is only an irregularity on the part of the assessor, the board of equalization, or the treasurer, which may be subject to explanation so as to cure the apparent defect, or, in other words, where the tax complained of is not necessarily void under all circumstances, then the remedy provided by sections 4024 and 4025, namely, payment under protest and an action to recover back is exclusive, except in those unusual cases mentioned in section 4026." This language was quoted with approval in *Hensley* v. *City of Butte*, 33 Mont. 206, 83 Pac. 481, and *Barnard Realty Co.* v. *City of Butte*, supra. (And see *Reilly* v. *Hatheway*, 46 Mont. 1, 125 Pac. 417; *Northern Pacific Ry. Co.* v. *Musselshell County*, 54 Mont. 96, 169 Pac. 53.)

These cases demonstrate conclusively that the remedies provided by sections 4023, now 2268, 4024 and 4026, now 2269 and 2272, have been deemed by this court to provide exclusive remedies as to all cases falling within their purview. When a tax is wholly illegal, or the legal and illegal portions thereof appear to be inseparable (*Northern Pacific Ry. Co.* v. *Musselshell County*, supra), either remedy is available. The remedy provided by sections 2269 and 2272—the legal remedy—is more comprehensive than that provided by 2268—the equitable remedy. The legislative history of these sections, supplemented by the interpretations given them by this court, demonstrate beyond a reasonable doubt that section 2269, with which we read 2272, provides an exclusive remedy (except as

the equitable remedy may also be available) for the recovery of taxes collected as the result of an unlawful levy. To this extent we reiterate that sections 4024 and 4026 repealed section 3913, now 2222. (Pol. Code 1895, sec. 5185; *Western Ranches* v. *Custer County*, supra.)

It is worthy of comment that in the third of a century which has elapsed since the Codes were adopted, although many strenuous contests have been waged in this court over taxes alleged to have been collected as the result of unlawful levies, none of the able counsel for the various complaining taxpayers sought to recover under section 2222,—an indication that counsel did not regard the statute as applicable. Only twice, so far as an exhaustive research discloses, has this court had occasion to mention section 2222 (3913, Pol. Code 1895; 2669, Rev. Codes 1907) : First, in *Anaconda Copper Mining Co.* v. *Ravalli County*, 52 Mont. 422, 158 Pac. 682, where the reference is but casual; second, in *Yellowstone Packing & Provision Co.* v. *Hays*, 83 Mont. 1, 268 Pac. 555, where the plaintiff had not paid the tax and consequently could not avail himself of the benefit of the statute, however it may be construed.

Reference has been made to the administrative policy indicated by the different amendments of section 4024, now 2269, culminating in the Act of 1925. (Sess. Laws 1925, p. 255.) We have adverted to the different provisions which the legislature has made respecting moneys paid under protest, eventuating in the statute which keeps the disputed money intact until the end of the controversy, and the speed with which the taxpayer must proceed if he desires to recover it, evincing a legislative desire to expedite the determination of controversies growing out of levies unlawfully made against the property of the taxpayer. Upon the termination of the controversy simple and effective directions are contained in section 2269 as amended and section 2271, Revised Codes of 1921, respecting the disposition of the money.

Section 2222 is far from accord with this policy. It does not contain any provision as to retention of the money by the

county treasurer; he may distribute it to the state treasurer, as well as to the municipalities and school districts within his county as their respective interests may appear. The taxpayer, unless he is obliged to file a claim with the board of county commissioners, under section 4605, which counsel for plaintiff disputes, may file his application for refund at any time within the appropriate period prescribed by the statute of limitations, and if the board of county commissioners rejects his claim he may begin suit—at his own pleasure, within the statute of limitations. If he is successful before the board, or at the end of his lawsuit, the county is put to the necessity of refunding the money it has spent, and distributed, and ordinarily must wait for a legislative appropriation for reimbursement of the amount paid to the state. We need not pursue the inquiry further. Clearly, this case is one wherein is involved an ''unlawful levy and collection of public revenue.'' The remedy provided by section 2269 is applicable, and section 2222 is not. The tax payment in November, 1927, was made voluntarily, and the plaintiff has no legal nor moral right to recover it.

Upon the theory adopted by court and counsel, the tax to the extent that it was computed upon the basis of seven per cent of the assessed value was lawful, and the portion in excess of that was unlawful. Accepting that postulate, the board of county commissioners should have refunded to plaintiff the sum of $312.19 instead of $245.95. The payment of November 29, 1927, not having been paid under protest, but voluntarily, was beyond recall, but having made that payment, plaintiff was required to pay on or before May 31, 1928, at 5 P. M., on the seven per cent basis, the sum of $66.24 only; that is, one-half of the amount which plaintiff, according to its own theory, was liable to pay for the 1927 taxes.

The cause is remanded to the district court of Sanders county with directions to modify the judgment in plaintiff's favor by entering judgment for plaintiff for the sum of $66.24 instead of for $378.43. As so modified the judgment shall

466

stand affirmed. The defendant shall recover its costs upon this appeal. Let remittitur issue forthwith.

ASSOCIATE JUSTICES MATTHEWS, GALEN and FORD and HONORABLE O. F. GODDARD, District Judge, sitting in place of MR. JUSTICE ANGSTMAN, disqualified, concur.