CHRISTOFFERSON, APPELLANT, *v.* CHOUTEAU COUNTY, RESPONDENT.

(No. 7,731.)

(Submitted November 17, 1937.   Decided December 7, 1937.)

[74 Pac. (2d) 427.]

*Messrs. Towner & Lewis,* for Appellant, submitted a brief; *Mr. Vernon E. Lewis* argued the cause orally.

*Mr. Harrison J. Freebourn,* Attorney General, *Mr. Carl N. Thompson,* Assistant Attorney General, and *Mr. J. W. Lynch,* County Attorney of Chouteau County, submitted a brief; *Mr. Thompson* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This is an appeal from a judgment of the district court of Chouteau County, approving the action of the board of county commissioners of that county in disallowing a claim for refund of certain taxes paid by the appellant to the county. The cause was submitted to the lower court upon an agreed statement of facts.

It appears from this statement that originally a quarter section of land situated in that county was school land, the property of the state of Montana. Prior to the first Monday in March, 1927, the state sold this land to Luther Winther, and issued a certificate of purchase to him, which required the making of annual payments over a period of years. He having failed to make his payments as agreed, the commissioner of state lands on April 4, 1935, canceled such certificate. Notice of this action was received by the county assessor of Chouteau County and, presumably, was received by the county treasurer. This notice directed the county treasurer to cancel any assessments for the current year, as well as all unpaid taxes against the land for the current year and all prior years. The treasurer made no entries on his records in accordance with this notice. Taxes were levied against the land for the years 1927 to 1935, inclusive, which the purchaser failed to pay. The land was sold for taxes for the year 1927, and the county became the purchaser

at the tax sale in January, 1928, and received the tax sale certificate.

About the first of December, 1935, Christofferson called at the office of the county treasurer and inquired of the deputy then in charge of the office, as to whether he could secure an assignment of the tax sale certificate, and thereafter a tax deed, to certain lands in the section where the quarter section is located. The deputy informed him that the land concerning which he made inquiry was state land, but that the quarter section in question was subject to tax deed, and that he could purchase the tax sale certificate and apply for a tax deed. Christofferson, being informed that the amount necessary to purchase the quarter section was the sum of $358.67, and relying upon the statement of the deputy treasurer, paid this sum and requested the treasurer to assign the outstanding tax sale certificate to him. The treasurer accepted the money and later delivered to him the assignment of the certificate, together with the tax receipts for the subsequent delinquent taxes. Christofferson took some steps to institute proceedings to secure a tax deed. Upon investigation he discovered that the land in question was state land. The certificate of purchase had been canceled and the county treasurer was without authority to issue the deed. He then filed his verified claim with the board of county commissioners, seeking a refund of the money paid by him. The claim was disallowed by the board. Appeal was perfected to the district court from the disallowance of this claim. The district court affirmed the decision of the board. Error is assigned upon the action of the trial court in making and entering its judgment affirming the decision of the board.

It is the contention of the claimant that he was entitled to a refund of this money under the provisions of section 2222, Revised Codes, providing as follows: ''Any taxes, per centum, and costs paid more than once or erroneously or illegally collected, may, by order of the board of county commissioners, be refunded by the county treasurer, and the state's portion of such tax, percentage, and costs must be refunded to the county, and

the state auditor must draw his warrant therefore, in favor of the county."

Counsel for the board argue that under this statute, as construed by decisions of this court, the claimant is not entitled to any relief.

In the case of *First Nat. Bank* v. *Sanders County,* 85 Mont. 450, 279 Pac. 247, this court considered at great length the history of this section and other sections of our Code. There action was brought against the county to recover certain taxes paid which had been computed upon an illegal assessment. It was there sought to sustain the right to recover on behalf of the plaintiff, relying upon the provisions of section 2222. The court held the action to be one wherein an unlawful levy and collection of public revenue were involved. It decided that sections 2268, 2269, and 2272 provided exclusive remedies as to all cases falling within their purview, and that, as to all such cases falling within the purview of these sections, section 2222 had been repealed. It was clear from the holding of the court in this case that, wherever an illegal tax was involved, the only remedy open to the taxpayer was the equitable remedy of injunction, or the legal remedy by paying the taxes under protest and bringing suit to recover in accordance with these statutory provisions. No attempt was made in that decision to include, within the rule there announced, taxes erroneously paid, if there be distinction between taxes illegally collected and erroneously collected. This decision was adhered to and followed, under similar facts, in the case of *First Nat. Bank* v. *Beaverhead County,* 88 Mont. 577, 294 Pac. 956.

In the case of *Williams* v. *Harvey,* 91 Mont. 168, 6 Pac. (2d) 418, the question was presented as to whether one might recover taxes paid twice on the same property, reliance being placed on the provisions of section 2222. It was held that such recovery might be had under this section. In the course of the consideration of that case, it became necessary for this court to determine whether the effect of the decisions in the two previous cases, namely, *First Nat. Bank* v. *Sanders County,* and *First Nat. Bank* v. *Beaverhead County,* supra, had amounted to a judicial decla-

ration that section 2222 had been repealed in its entirety. The court there concluded that it had not, but, in stating what had been decided in these two previous cases, it was declared that the section was repealed in so far as it related to the right of recovery of taxes erroneously or illegally collected.

A careful reading of these two previous decisions reveals that the court nowhere discussed or referred to taxes erroneously collected, as distinguished from taxes illegally collected, unless we assume that the two terms in the statute are entirely synonymous. Therefore this court in the *Williams Case*, in summarizing the holding in the previous cases that it was there decided that the statute was repealed as to taxes erroneously collected, made this statement inadvertently.

In the case of *Ford* v. *McGregor*, 20 Nev. 446, 23 Pac. 508, the court found it necessary to determine whether there was a distinction between an erroneous assessment and an illegal assessment. It there said that an erroneous assessment occurs when the taxing officers have power to act but err in the exercise of that power, and that an illegal assessment takes place when they have no power to act at all.

The South Dakota court, in the case of *Security Nat. Bank* v. *Twinde*, 52 S. D. 352, 217 N. W. 542, 544, found it necessary to determine whether a statute authorizing a refund of taxes erroneously paid would include a tax which for any reason was invalid or illegal. The court said: "It seems clear that the words 'erroneously paid' as here used cannot be applied to the payment of any tax which for any reason is invalid."

We conclude that, when the legislature used the words "erroneously collected" and "illegally collected," that body recognized a distinction between them, and what this court has said in previous decisions, with reference to the repeal of the section with relation to taxes illegally paid, cannot be held to have declared the repeal of the section relating to taxes erroneously paid.

We will now proceed to determine the nature of these taxes in order to determine within which classification they properly fall. Section 1805.92, Revised Codes, provides that the interest of the purchaser in state lands is subject to taxation. The in-

terest of the state could not constitutionally be taxed. (Article XII, section 2, Constitution.) Section 1805.88 provides that a certificate of purchase of state lands may be canceled upon default. Thus it clearly appears that at the time these taxes were levied and assessed they were, so far as this record discloses, levied and assessed in accordance with the laws of the state. After their imposition, and long after they became delinquent, the state land commissioner canceled the certificate of purchase in accordance with the statute. Thereupon the interest of the purchaser in the land became extinguished, i. e., the interest on which these taxes were a lien; the interest being extinguished, the lien likewise ceased to exist.

While the notice from the state land commissioner directed the county treasurer to cancel the taxes theretofore imposed, and such is the wording of the statute (sec. 1805.94), we doubt the authority of the legislature to authorize the cancellation of taxes in the sense of releasing the obligation of the taxpayer to pay. But the legislature might well, in the circumstances, direct the county treasurer to cancel the taxes in so far as they constituted a record lien upon this property.

Taxes are not levied upon the property but upon the person; while the property which the person owns is used to determine the amount of the tax he shall pay, it is after all the person who pays the tax; he is liable. The property, under our statutes, is security for the payment. (*Ford Motor Co.* v. *Linnane*, 102 Mont. 325, 57 Pac. (2d) 803.) Our Constitution prohibits the cancellation of an obligation due the state, by any such method. (Article V, sec. 39.) However, we think the statute may be very properly construed to mean nothing more than the cancellation of the lien against the land.

It is argued, however, that even at the time the certificate of purchase was canceled, the rights under it had not been entirely extinguished, in that, under section 1805.89, after such cancellation the certificate is subject to reinstatement within 18 months. But the right to reinstatement is not absolute; it can only be made upon application by the original purchaser or his heirs, assigns, or devisees. The claimant here was not an as-

signee of the purchaser; neither was he an heir or devisee, so far as the record discloses. Hence, he was not among those classes who might apply for reinstatement. Furthermore, under that section, the right of reinstatement is not one which the board is bound to grant, but may do so in its discretion, and, furthermore, the board is powerless to allow reinstatement in any event if the land has been sold in the meantime to another purchaser. Hence, in so far as this claimant was concerned, he had no right to succeed to the right of the purchaser of the state land to secure a reinstatement of the contract of purchase.

An assignee of a tax sale certificate acquires all of the right of the county therein acquired at such sale. (Sec. 2207, Rev. Codes.) The right which the county had acquired at the tax sale of these lands and premises, through the chain of events which we have set forth, amounted to exactly nothing at the time the assignment of the tax sale certificate was made, and, therefore, this claimant received nothing for the money paid to the county treasurer.

But it is argued on behalf of the board of county commissioners that the payment by the claimant was voluntary, and that he cannot recover under the familiar rule that taxes voluntarily paid may not be recovered. Reliance is placed upon a number of California decisions, which are said to construe an identical statute of that state. For many years California had a similar statute, and some of their early decisions, when first read, appear to sustain this view. However, most of those on which counsel rely arose in a manner different from that in which this case arose.

In the cases of *Loomis* v. *County of Los Angeles,* 59 Cal. 456, *Harper* v. *Rowe,* 53 Cal. 233, *Grimley* v. *Santa Clara County,* 68 Cal. 575, 9 Pac. 840, and *O'Brien* v. *Colusa County,* 67 Cal. 503, 8 Pac. 37, actions were brought to recover taxes paid. Relying upon the statute, it was sought to maintain these actions thereunder. In none of these cases was a claim filed with the board of commissioners seeking relief under the statute. The court in all of them said that, where an action was brought to recover taxes voluntarily paid, recovery might not be had, and that a

statute similar to our own now under discussion did not change the rule.

In the case of *Younger* v. *Supervisors of Santa Cruz County,* 68 Cal. 241, 9 Pac. 103, mandamus was sought to compel the board to allow the claim after its disallowance. The court determined that the power exercised by the board in passing on the claim was judicial, and, therefore, its discretion might not be controlled. However, later decisions of California gave more serious consideration to the effect of the statute when relief was sought under it by application to the board for action, as distinguished from the institution of a suit.

In *Pacific Coast Co.* v. *Wells,* 134 Cal. 471, 66 Pac. 657, 659, the taxpayer made his return to the assessor, who in transcribing the total valuation of the taxpayer's property inadvertently added $100,000 more to certain classes of property. The taxpayer voluntarily paid the taxes, including those levied on this erroneous assessment. Application was made to the board of supervisors, who directed the refund of the amount of the tax erroneously paid. The auditor refused to make payment, and the action was to compel him to make it. The statute then obtaining in California was not unlike our own. The court there reviewed and adhered to what it had said in a previous decision. In the course of its opinion it said: ''In *Hayes* v. *County of Los Angeles,* 99 Cal. 74, 33 Pac. 766, it appeared that by some mistake real estate had been twice assessed. The owner had been assessed with the property, and had paid the taxes. It had also been assessed to a third party, and the taxes so assessed to such third party were not paid. It was accordingly advertised and sold for delinquent taxes. The purchaser at the tax sale paid the delinquent taxes and costs, and afterwards sold and assigned the certificate of purchase. Upon the assignee discovering that the sale was on a double assessment and void, he applied to the board of supervisors for an order refunding the money. The board refused the order, and this court held that the order should have been made, and that the word 'may' meant the same as 'shall.' In the opinion this language is used: 'It had often occurred, prior to the amendment to the Code

above quoted, that by accident or oversight, property was twice assessed, and the taxes twice collected. Yet the obstacles in the way of a recovery of the taxes thus improperly collected were so numerous and preplexing, that the remedy for a recovery was scarcely worth pursuing. That the object of the statute was to obviate these difficulties, and provide a means for the recovery of moneys collected by mistake, and to which the county and state have neither a moral nor legal right, is apparent. * * * Section 3804 was enacted to do justice in a class of cases where, but for its provisions, the application of the doctrine of *caveat emptor* would work a hardship to citizens who had paid money which it was inequitable for the county to retain.' "

We are in accord with the rule above announced. The effect of this statute, in so far as it remains in force, is to avoid, where properly applicable, the harsh common-law rule recognized by the courts in proper cases prohibiting the recovery of a tax where voluntarily paid.

Let it be understood that we have not overlooked, and do not intend to depart from, the decision of this court declaring the portion of this section unconstitutional with reference to refunds by the state auditor to the county treasurer, under section 2222, Revised Codes, as decided in *Yellowstone Packing & P. Co.* v. *Hays,* 83 Mont. 1, 268 Pac. 555.

The board of county commissioners was in error in disallowing the claim, and the trial court was likewise in error in affirming their conclusions. Accordingly, the judgment is reversed, with directions to the district court to enter a judgment reversing the decision of the board of county commissioners, and directing such board to proceed in accordance with the views herein expressed.

Mr. Chief Justice Sands and Associate Justices Stewart, Morris and Angstman concur.