No. 90-491

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

FILED

SEP 9 - 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

RICHARD J. LINGSCHEIT,

      Plaintiff and Appellant,

  -vs-

CASCADE COUNTY, a body politic, RICHARD J. MICHELOTTI and MONTANA DEPARTMENT OF REVENUE,

      Defendants and Respondents.

---

APPEAL FROM:    District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Joel G. Roth, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Robert P. Goff argued; Church, Harris, Johnson & Williams, Great Falls, Montana.

      For Respondent:

          Geralyn Driscoll argued; Department of Revenue, Helena, Montana.

---

Submitted: June 18, 1991

Decided: September 9, 1991

Filed:

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

The plaintiff taxpayer, Richard J. Lingscheit appeals the order of the Eighth Judicial District Court, Cascade County, granting summary judgment to the defendants, Cascade County and the Montana Department of Revenue and denying taxpayer's request for a refund of allegedly overpaid property taxes. Taxpayer requested a refund pursuant to § 15-16-601, MCA. The sole issue on appeal is whether the District Court erred in granting summary judgment to the defendants. We affirm.

The taxpayer is the former owner of the Holiday Inn motel in Great Falls, Montana. The property was appraised by the Department of Revenue (DOR) at $2,496,924 during the taxpayer's ownership. In 1986 and 1987, the Cascade County Commissioners levied taxes on the property based on that appraised value. Taxpayer paid the taxes based on that appraisal for those years without protest.

Taxpayer sold the real property on November 24, 1987. The new owner protested the appraised value for the 1988 taxable year and sought relief from the Cascade County Tax Appeal Board. A hearing took place on July 28, 1988.

At that hearing, the DOR's appraiser testified that he had not followed the guidelines set forth under The Marshall-Swift Valuation Service Manual. The appraiser stated that the DOR's administrative regulation, A.R.M. 42.19.101(2) requires use of the manual. The manual requires an appraiser to use his independent judgment when appraising property. The appraiser also testified that he did not appraise the property by that method; rather, he

2

utilized the DOR's policy statement 83-1, which includes appraisal guidelines for franchises and provides a cost ranking of Holiday Inns.

In its order, the County Tax Appeal Board did not address whether an incorrect appraisal method was used, but merely stated that "[t]he Board feels this property should be given an additional 20% reduction for Functional Obsolescence."

On September 29, 1988, following the issue of that order, the taxpayer plaintiff petitioned for a tax refund for the years 1986 and 1987. The County Commissioners took no action on the petition. On February 16, 1989, the taxpayer filed an action against the county and its treasurer. The DOR intervened as a party defendant.

On July 10, 1989, the DOR moved for summary judgment. The motion was briefed and argued on May 16, 1990 and on May 23, 1990 the District Court issued its order granting summary judgment in favor of the defendants. Taxpayer now appeals.

The statute at the center of the issue here is § 15-16-601, MCA, which provides in pertinent part:

> Any taxes, interest, penalties, or costs paid more than once or erroneously or illegally collected . . . may, by order of the board of county commissioners, be refunded by the county treasurer.

Section 15-16-601, MCA. Taxpayer asserts that the relief afforded by the statute is available to him. In his complaint he alleges that due to the inconsistency between the policy incorporated by the DOR in The Marshall-Swift Valuation Service Manual and the DOR's internal policy statement 83-1, the taxes levied on his former property were either illegally or erroneously collected.

The taxpayer relies primarily on Christofferson v. Chouteau County (1937), 105 Mont. 577, 74 P.2d 427; and Department of Revenue v. Jarrett (1985), 216 Mont. 189, 700 P.2d 985, in support of his position. In Christofferson, the County erroneously required the plaintiff to purchase a tax sale certificate when purchasing a parcel of state land. Several months prior, the Commissioner of State Lands had directed the county treasurer to cancel any assessments as well as unpaid taxes against the land. The plaintiff requested a refund upon discovering that the land was state land, the certificate of purchase had been cancelled, and he could not have a tax deed. This Court reversed the denial of the refund, holding that the predecessor to § 15-16-601, MCA, was enacted to avoid the harsh voluntary payment common law rule in the case of illegal and erroneous tax collections. The former rule provided that taxes voluntarily paid could not be recovered. Christofferson, 74 P.2d at 431-32.

In Jarrett, the DOR mistakenly appraised the taxpayer's lot at $14,510.00 for 1978 through 1981 under the erroneous belief that the lot was included in a special improvement district which provided sewer facilities. The lot was not located within the district. DOR discovered the error in 1982 and reappraised the lot at $7,418.00. Taxpayer had paid the taxes for 1978 through 1981 without protest. After the lower appraisal, the taxpayer filed a claim for a refund of the overpaid taxes with the County Commissioners pursuant to § 15-16-601, MCA. The commissioners denied his claim and he appealed to the County Tax Appeal Board.

4

The County Tax Appeal Board awarded the refund as did the State Tax Appeal Board. DOR sought judicial review, and the district court affirmed the refund on summary judgment. This Court affirmed the district court. In Jarrett, we noted that § 15-16-601, MCA, was only available to a taxpayer who has no recourse under § 15-1-402, MCA, which provides for payment of taxes under protest and an action to recover. Jarrett, 700 P.2d at 988, see also Montana Bank of Roundup, N. A. v. Musselshell County Board of Commissioners (Mont. 1991), 810 P.2d 1192, 1195, 48 St.Rep. 392, 394. In this case, the taxpayer argues that at the time in 1986 and 1987 when he would have had to commence the remedy process under § 15-1-402, MCA, by filing an administrative appeal with the Cascade County Tax Appeal Board, he did not know of the existence of the alleged illegal or erroneous valuation. The property no longer belonged to him in 1988.

In this case, we first note that the use of the word "may" in the statute does not mandate that the county commissioners order a refund in all cases of an erroneously or illegally collected tax. The statute is permissive rather than mandatory. See § 15-16-601, MCA. Thus, once a legal determination is made that taxes were erroneously or illegally collected, it is still within the discretion of the Board of County Commissioners to decide if the situation warrants a refund to the taxpayer. Hence, we review the denial of the refund under the abuse of discretion standard.

We conclude that the Board did not abuse its discretion in denying the refund. While the case is similar to Jarrett and

Christofferson, both Jarrett and Christofferson involved mistakes in appraisals that were clerical in nature. In both cases the assessments at issue should never have been made. In this case, the taxpayer does not allege that the assessment should never have been made; rather, he alleges an error in the methodology used by the appraiser and the DOR. At the hearing on taxpayer's successor's refund, the DOR's appraiser gave the following testimony:

> Q. So you didn't use your own independent judgment in arriving at that cost ranking, is that correct?
>
> A. No, I did not.
>
> Q. And you have no alternative but to assign a 3 ranking to the property?
>
> A. It was my feeling that I was obligated to use their grade level, yes.

The appraiser admitted that he used the DOR's cost ranking policy rather than exercising his own independent judgment in appraising the property. However, his testimony does indicate that he did use his independent judgment in deciding that he was obligated to follow the DOR's cost ranking. Thus, the alleged error here is not clerical, it involves the exercise of the appraiser's judgment in determining what method he should use. Furthermore, in its order reducing the taxes of the taxpayer's successor in interest, the board did not find that an incorrect appraisal method was used, but merely stated that "the Board feels this property should be given an additional 20% reduction for Functional Obsolescence." Thus, unlike Jarrett and Christofferson, it is not certain that the taxes

6

levied against the property during this taxpayer's ownership were in fact excessive.

The case of North Butte Mining Co. v. Silver Bow County (1946), 118 Mont. 618, 169 P.2d 339, supports our decision in this case. There, the taxpayer sought refunds of net proceeds paid to the County in 1942 and 1943. The value of the net proceeds reported in 1942 and 1943 had included a "government bonus or subsidy" which in 1945 this Court held was not part of the net proceeds of a mine. The County denied the refunds and this Court upheld the refusal stating that "[a] mistake in the valuation of property resulting in an excessive tax is no ground of recovery under a statute such as section 2222 [the predecessor of § 15-16-601, MCA]." North Butte Mining Co., 169 P.2d at 341. This Court further stated:

> It is our view that neither the levy, assessment nor the collection of the tax was wrongful or illegal. To constitute a wrongful or illegal levy, assessment or collection there must have been unwarranted or illegal action on the part of the taxing officials. There is none such here. The only assessment and levy that could have been made under the facts contained in the statement furnished by the plaintiff was the assessment and levy which was made and the only proper tax to be collected from the statement furnished was that which was collected.

North Butte Mining Co., 169 P.2d at 340. Here the taxpayer's allegations pertain strictly to the method used in appraising the property, there is no evidence that if the appraiser had followed the manual that a lower valuation would definitely have been reached. It is possible that use of his independent judgment may have resulted in a higher appraisal. The taxpayer each year was

7

provided notice that he had available the administrative appeal procedures provided by §§ 15-1-402, 15-7-102, and 15-15-102, MCA, if he felt the valuation for any reason was not the fair market value. He failed to use these remedies. In light of this and the discretion conferred by the statute to the County Commissioners, we conclude that the commissioners did not abuse their discretion in denying the refund. This being strictly a legal question, the District Court did not err in granting summary judgment to the DOR and the County. Rule 56(c), M.R.Civ.P. The order of the District Court is

**AFFIRMED.**

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

8

Justice John Conway Harrison, dissenting.

I dissent. I would find that this case is controlled by our holding in Department of Revenue v. Jarrett (1985), 216 Mont. 189, 700 P.2d 985, where this Court interpreted § 15-16-601, MCA, in favor of the taxpayer. In Jarrett, the taxpayer alleged that a portion of his taxes were erroneously collected from him. Under § 15-16-601, MCA, that taxpayer in Jarrett was entitled to recover that portion of the tax based on the erroneous assessment which he voluntarily paid in prior years. Jarrett, 700 P.2d at 989.

I would hold that under this Court's holding in Jarrett, and the interpretation of § 15-16-601, MCA, the taxpayer in the instant case is entitled to the recourse provided under that code section. Here the taxpayer did not own the subject property at the time he learned that the erroneous or illegal taxes had been collected or at the time he made claim for the recovery of those taxes. Nor do I find it significant to the decision that the taxpayer's successor in interest and not the taxpayer made the appeal to the county board through which the erroneous or illegal tax collection was discovered. I would further note that in this decision the taxpayer has met the requirements in § 15-16-601, MCA, for illegal or erroneously collected taxes.

In an early case, Christofferson v. Chouteau County (1937), 105 Mont. 577, 74 P.2d 427, the Court recognized that the remedy created in § 15-16-601, MCA, is an exception to the common law "voluntary payment rule." That rule does not and should not bar

9

the taxpayer from a remedy in this case. As I view this section, it provides a taxpayer a remedy for illegally or erroneously collected taxes even though he or she voluntarily paid those taxes when they became due and believed at the time that the taxes were being lawfully and correctly collected.

I would reverse the District Court's grant of summary judgment and allow the taxpayer to present his case to the trier of fact for a decision on the merits.

_____
Justice

Justice Terry N. Trieweiler dissenting.

I dissent from the opinion of the majority.

This case was dismissed by summary judgment for the wrong legal reasons. The majority treats it as if it went to trial and failed for lack of proof.

In plaintiff's affidavit in opposition to the Department of Revenue's motion for summary judgment, he pointed out that he owned the property in question from January 1, 1986, through November 24, 1987, but that it was not until late 1987, after he could no longer file an appeal under § 15-1-402, MCA, that he learned about the illegal and erroneous manner in which his property had been appraised. In late 1987, he learned that the Department of Revenue had issued Policy Statement 83-1 which resulted in an appraisal precluding independent judgment of the appraiser, contrary to the Marshall Swift Valuation Service Manual which had been adopted by the Department of Revenue by administrative regulation, A.R.M. 42.19.101, as the acceptable method for appraising commercial improvements.

Upon learning about the irregularity and the method by which his property had been appraised, plaintiff consulted his attorney, who advised the party that had purchased plaintiff's property. That party then brought an administrative appeal before the Cascade County Tax Appeal Board, which resulted in a reduction of the appraised value.

George Tyner, the person who had appraised plaintiff's property, testified at the appeal hearing before the Cascade County Tax Appeal Board. A partial transcript of his testimony was provided to the District Court in opposition to the Department of Revenue's motion for summary judgment, and established the following facts:

Q. Anyhow, in evaluating this property for the current appraisal cycle, you then were given a directive by Helena to rank it as a 3, is that correct?

A. Yes.

Q. Okay. So the Department of Revenue in Helena just arbitrarily said that the particular franchise motel here will have a 3 regardless of what physical condition it's in, is that correct?

A. They put out the policy. I don't how they arrived at it; if it was arbitrary, if they did some market analysis, or what they did. I don't know. They didn't . . .

Q. But somebody in Helena . . . .

A. Yes.

Q. . . . determined what the quality of this particular motel was here in Great Falls, is that a fair statement?

A. Yes.

Q. Did you personally determine it to be a 3?

A. No.

Q. You were simply told by Helena that it was 3?

A. Yes.

Q. So you didn't use your own independent judgment in arriving at that cost ranking, is that correct?

A. No. I did not.

Q. And you have no alternative but to assign a 3 ranking to the property?

A. It was my feeling that I was obligated to use their grade level, yes.

Q. Isn't use of the Marshall Valuation Service Manual mandated by the Administrative Rules of the State of Montana?

A. Yes.

Q. And you're familiar with . . . Does not the Marshall Valuation Service Manual require the use of independent judgment in arriving at the value of the subject property?

A. That's my interpretation of it, yes.

Q. Is it a fair statement then that the Department of Revenue has made no attempt to follow its own guidelines in the Marshall Valuation Service which requires an appraiser to use his own independent judgment when you've arbitrarily taken the cost classification from Helena?

A. I would say that's a fair statement.

Q. That's contrary to the manual, isn't that correct?

A. Yes.

Q. Prior to this policy statement coming out, I would think that it's a fair statement that this office in Great Falls exercised its own independent judgment and found it to be a Class 2 building.

A. They may have. I don't know because I don't have a grade entered.

Q. At any rate, the DOR say in Helena to place it at a Class 3 building, correct?

A. Yes.

Q. Okay. How does Helena really know what the quality of that building is?

13

A. I don't know. I'm assuming before they put out the policy that they did some market analysis. I don't know if they did or not. I really don't know.

Q. If they did any market analysis, you don't know if it included the Great Falls property or not?

A. No, I don't.

It is clear from Tyner's testimony that the taxes levied on plaintiff's property were based upon a method of appraisal which violated the Department of Revenue's own administrative rules. The method of assessment was, therefore, erroneous and illegal, and the County Tax Appeal Board found that the assessment which resulted from that method of appraisal was excessive.

Plaintiff was not in possession of this information within the time allowed for filing appeals under § 15-1-402, MCA. Therefore, his situation is exactly the kind of situation for which § 15-16-601, MCA, was intended.

Section 15-16-601, MCA, provides in relevant part that:

(1) (a) Any taxes . . . erroneously or illegally collected . . . may, by order of the board of county commissioners, be refunded by the county treasurer.

In *Department of Revenue v. Jarrett* (1985), 216 Mont. 189, 700 P.2d 985, the issue was simply whether the value of property can be changed for past tax years pursuant to § 15-8-601, MCA, when a taxpayer has not filed any administrative appeals as to those tax years. We held that it could. In disposing of the Department of Revenue's argument that the taxpayer was barred under § 15-8-601, MCA, by failing to have

14

availed himself of the appeal process under § 15-1-402, MCA, we stated:

> This statute is permissive not mandatory. A taxpayer can only use this protest procedure if he is aware that his taxes may be incorrect at the time he pays them. A taxpayer who does not know he is being overtaxed will not pay his taxes under protest and can not receive a refund under section 15-1-402, MCA.
>
> . . . .
>
> Section 15-16-601, MCA, provides the necessary relief for respondent.
>
> . . . .
>
> Clearly, section 15-16-601, MCA, was not meant to be used in lieu of the section 15-1-402, MCA, requirements of paying under protest, but when the recourse of section 15-1-402, MCA, is not available, a taxpayer can obtain a refund under section 15-16-601, MCA.

*Jarrett*, 216 Mont. at 192-94, 700 P.2d at 987-88.

Furthermore, even though the relief provided for by § 15-16-601, MCA, is discretionary, this Court found that the discretion of the county commissioners can be abused, and so held on appeal. We stated:

> Section 15-16-601, MCA, provides that taxes paid erroneously may be refunded by the county treasurer, *"by order of the board of county commissioners."* The Yellowstone Board of County Commissioners denied respondent's request for a tax refund. However, respondent has followed the proper procedure for appealing that decision.
>
> . . . .
>
> The Yellowstone County Tax Appeal Board properly reviewed the respondent's case and determined respondent was due a refund.
>
> . . . .

15

> . . . The state board found an erroneous appraisal resulted in a mistaken levy. This finding was contrary to the finding of the county commissioners. The evidence was in dispute and the finding could go either way.
>
> . . . .
>
> It is the opinion of the Court that under section 15-16-601, MCA, respondent should receive a tax refund for the erroneous assessment made on his land in 1978 through 1981. We remand to the Yellowstone Board of County Commissioners with instructions to order the Yellowstone County Treasurer to issue a refund to respondent.

*Jarrett*, 216 Mont. at 194-95, 700 P.2d at 988-989.

In spite of the majority's efforts, the circumstances in *Jarrett* are indistinguishable from the circumstances in this case. In *Jarrett*, the taxpayer's land was erroneously appraised based on inaccurate factual information. In this case, the taxpayer's land was erroneously and illegally appraised, based upon an improper method of appraisal which was based upon arbitrary and inaccurate information about its true value. In both cases, the taxpayer was unaware of the error or irregularity until after the time had expired for filing appeals under § 15-1-402, MCA. Therefore, in neither case could the taxpayer avail himself of the administrative appeal process.

The majority emphasizes that the statute relied upon by plaintiff uses the word "may" and is therefore permissive, rather than mandatory. However, the permissive language in the statute did not prevent this Court from reversing a decision of the county

16

commissioners in *Jarrett* when its discretion was found to have been abused.

Furthermore, the County Commissioners in this case failed to exercise the discretion which § 15-16-601, MCA, requires that they exercise. The plaintiff filed a verified petition for a refund of taxes with the County Commissioners on September 29, 1988. As of February 16, 1989, five and one-half months later, the County Commissioners had taken no action on the plaintiff's petition.

On February 16, 1989, plaintiff filed a complaint in the District Court for review of the commissioners' inaction. However, the District Court did not review the commissioners' inaction to determine whether its discretion had been abused. The District Court erroneously dismissed plaintiff's complaint by summary judgment based upon its erroneous conclusions about the applicability of the *Jarrett* decision to this case. The District Court concluded that *Jarrett* was inapplicable for the following reasons:

1. In *Jarrett*, the Department of Revenue discovered its own error;

2. In *Jarrett*, the same person owned the property at the time the error was made and at the time it was discovered; and

3. The person who succeeded plaintiff as the owner of the property in this case paid under protest and appealed to the County Tax Appeal Board.

17

None of the factual distinctions relied upon by the District Court were in any way material to this Court's decision in *Jarrett*.

The County Commissioners gave no reasons for not granting plaintiff's petition, and the District Court failed to review the County Commissioners' inaction to determine whether they abused their discretion. Therefore, the fact that § 15-16-601, MCA, is permissive is irrelevant to our review of this case. How can we conclude that the board did not abuse its discretion when the board never exercised its discretion and we have absolutely no record from which to determine how it arrived at its decision to ignore plaintiff's petition? We do not even have any basis to conclude that it decided to ignore plaintiff's petition. For all we know, and for all plaintiff knows, the petition could have been lost on a clerk's desk and the commissioners may have never seen it.

The majority tries to distinguish *Jarrett* on the ground that the mistake in that case was clerical in nature and resulted in an assessment which should never have been made. However, that is not correct. There was ultimately a correct appraisal from which a tax was levied. The problem with the original appraisal was simply that it was "erroneous."

The basis of plaintiff's claim in this case is that when the appraiser failed to use his own independent judgment while appraising his property, he violated the regulations, rules, and laws established by the Department of Revenue. Therefore, the appraisal

18

was illegal and the tax levied pursuant to that appraisal was illegal and erroneous. The majority's effort to ignore that undisputed fact is at best a classic example of sophistic reasoning. The majority states:

> The appraiser admitted that he used the DOR's cost ranking policy rather than exercising his own independent judgment in appraising the property. However, his testimony does indicate that he did use his independent judgment in deciding that he was obligated to follow the DOR's cost ranking. Thus, the alleged error here is not clerical, it involves the exercise of the appraiser's judgment in determining what method he should use.

In other words, what Tyner did was okay because he used his own judgment in deciding not to exercise his own judgment.

Next, the majority concludes that "[t]hus, unlike Jarrett and Christofferson, it is not certain that the taxes levied against the property during this taxpayer's ownership were in fact excessive."

Of course, it is not clear that they were excessive. We can presume that they were excessive by the mere fact that the County Tax Appeal Board reduced them by 20 percent when they were appealed. However, we cannot know they were excessive because plaintiff was denied an opportunity to prove what the results would have been had the correct appraisal method been used when his claim was dismissed by summary judgment for the wrong legal reasons.

Finally, this Court relies on its previous decision in *North Butte Mining Co. v. Silver Bow County* (1946), 118 Mont. 618, 169 P.2d 339. However, the facts on which that decision was based are in no way similar to the facts in this case. In *North Butte Mining Co.*, plaintiff's

19

net proceeds taxes were computed by the State Board of Equalization based upon figures submitted by plaintiff. The plaintiff's figures included government bonuses or subsidies which should not have been included. This Court found that any error in that case was a direct result of actions by the taxpayer and not by the government. That was the basis for our decision that § 2222, R.C.M. (predecessor to § 15-16-601, MCA), was inapplicable. We stated:

> To constitute a wrongful or illegal levy, assessment or collection there must have been unwarranted or illegal action on the part of the taxing officials. There is none such here. The only assessment and levy that could have been made under the facts contained in the statement furnished by plaintiff was the assessment and levy which was made and the only proper tax to be collected from the statement furnished was that which was collected.
>
> . . . .
>
> Since the statute does not authorize the refund of taxes voluntarily paid <u>through mistake of law on the part of the taxpayer</u>, plaintiff's claim was properly disallowed by the county.

*North Butte Mining Co.,* 118 Mont. at 620, 622, 169 P.2d at 340, 341 (emphasis added).

In this case, unlike *North Butte Mining Co.,* the error or illegality complained of was committed by the State's appraiser. The plaintiff had nothing to do with the conduct complained of. Therefore, *North Butte Mining Co.* has nothing to do with the facts in this case.

For these reasons, I would find that, while the County Commissioners have some discretion under § 15-16-601, MCA, they have abused that discretion by failing to act in any way. I would reverse

20

the District Court and remand this case to the Board of County Commissioners for Cascade County with instructions to properly consider plaintiff's petition, and either grant it, or in the event that it is denied, to set forth proper findings and conclusions which form the basis for its denial so that that decision can be properly reviewed by the District Court.

_____
Justice

21