YALE OIL CORPORATION, APPELLANT, v. PLENTYWOOD FARMERS' OIL CO. ET AL., RESPONDENTS.

(No. 7,379.)

(Submitted January 8, 1935. Decided January 23, 1935.)

[41 Pac. (2d) 10.]

Cause submitted on briefs of Counsel.

*Mr. Howard M. Lewis* and *Mr. P. F. Leonard,* for Appellant.

584

586

*Mr. Grant Bakewell,* for Respondents.

588

MR. JUSTICE STEWART delivered the opinion of the court.

This is an appeal from a special order made in a foreclosure action after final judgment by the district court of Sheridan county.

Previous to January 21, 1932, respondent, a Montana corporation, had purchased from appellant merchandise and had become indebted to appellant in the sum of $4,590.53. On that day two promissory notes were executed by respondent and made payable to appellant in the aggregate amount of such indebtedness. At the same time mortgages to secure the payment of the notes were executed and delivered to appellant. One was a chattel mortgage covering the personal property used by respondent in its oil and gas business; the other was a real estate mortgage covering the real property upon which the operations were conducted. The mortgages were foreclosed by means of a court proceeding in the district court of Sheridan county, and on July 21, 1934, a judgment was entered by the court in favor of appellant for $5,801.10. This judgment was based on findings of fact and conclusions of law made by the court. Among other things, it directed the sale of the mortgaged property for the satisfaction of the amount found due. The judgment provided, by agreement of counsel, that the property, both real and personal, be sold in one parcel. It further provided that the purchaser at the sheriff's sale be entitled to the immediate possession of the property, and that, in case the property did not sell for enough to satisfy the judgment, a deficiency judgment be docketed for the balance remaining unpaid after the application of the proceeds of sale. Under an order of sale issued to him on July 21, 1934, the sheriff proceeded to advertise the property for sale.

On August 9, 1934, previous to the day of the sale, respondent filed in the district court a petition for stay of proceedings under the provisions of Chapter 116 of the Laws of the

Twenty-third Legislative Assembly (1933). The petition recited the facts in connection with the foreclosure matter, and additional facts to the effect that the respondent was operating the property as a gas and oil station and using the whole thereof in its business; that, unless restrained, the sheriff would sell all the property on the eighteenth day of August, 1934, pursuant to the provisions of the decree; that the property had a value of approximately $18,000; that if the appellant was allowed to proceed with the sale, respondent would suffer great and irreparable damages, which would mean the entire annihilation of its property and business; that respondent had outstanding between sixteen and seventeen thousand dollars due from farmers residing in the vicinity; that if it had not been for the depression and continued crop failures during the past several years, the accounts would have been paid; that respondent was willing to pay the judgment and decree in full, and would do so as soon as conditions were such that it could collect sufficient of its outstanding accounts receivable; that if respondent was allowed to remain in possession of the premises, it could save the same from injury and waste and keep them in good repair; that it was willing to pay to appellant a reasonable rent therefor; that by reason of the depression and the failure to collect the accounts, respondent could not raise the money to pay the amount of the judgment; and that on account of the depression and the economic conditions prevailing throughout the entire United States, and the whole world, respondent was unable to borrow sufficient money to pay the indebtedness.

Appellant filed an answer, designated "objections," to the petition, in which it recited the facts of the foreclosure, the terms of the judgment, and the fact that two mortgages were foreclosed, one a real estate mortgage and the other a chattel mortgage; that the facts and circumstances did not warrant and justify the requested action in the way of a stay of proceedings; and, finally, that the provisions of Chapter 116, supra, were not applicable to the case, by reason of the fact that its provisions related only to actions involving real estate mortgages, whereas the instant action involved both real and

chattel mortgages. The objections and answer challenged the constitutionality of Chapter 116, on the grounds that it contravened several enumerated provisions of the state and federal Constitutions, particularly those provisions relating to the impairment of contracts.

The court set the matter for hearing and took testimony. The principal witness at the hearing was one H. C. Jensen, the president of the respondent corporation. He testified that he owned approximately seventy per cent. of the stock of his corporation, and that farmers in the community owned the rest of it; that the corporation owned real estate and personal property of the value of $25,000; that, with the stock on hand, the total value of the property owned by respondent was approximately $30,000; that he had been offered $18,000 for the property in the previous January and had refused to accept; and that the property was worth that amount at the time of the hearing, although he said it was impossible at that time to make a sale for a reasonable price. He testified that the corporation had outstanding $12,000 or $15,000 in open accounts, all contracted not prior to 1931; that $3,000 of these accounts were current and in process of collection; that he expected to collect from $2,800 to $3,000 by the spring of 1935; that many of these collections would be made possible through government loans to farmers; that the corporation owed no current indebtedness, although he admitted on cross-examination that there were unpaid taxes standing against the property for years previous to 1934 in the sum of $1,424.13; that $15,000 insurance was carried upon the property; and that he had tried to borrow money with which to pay the debt, but had been unable to do so or otherwise to raise the amount due on the judgment. When he was examined as to the extent of his activities in the matter of attempts to borrow money, an objection was made and sustained, so that the matter was left to stand upon Jensen's statement that he had attempted to raise the amount of the judgment but was unable to do so.

Evidence was taken as to the rental value of the property, the amount of income therefrom, the general situation in and

about the community, and particularly with regard to the property.

At the close of the hearing the court made an order staying all proceedings until the first day of March, 1935, and providing that respondent should pay to appellant the cost of advertising the sale; that it should pay the 1934 taxes before they became delinquent; that it should keep the fire insurance in effect in favor of appellant; and that it should pay as a monthly rental for the use of the property the sum of $75. Appeal was taken from this order.

Respondent relies upon the decision rendered by the United States Supreme Court in the case of *Home Building & Loan Assn.* v. *Blaisdell,* 290 U. S. 398, 54 Sup. Ct. 231, 78 L. Ed. 413, 88 A. L. R. 1481. This case is known as the Minnesota Moratorium case. It was rendered by a divided court. Two opinions appear—one written by Chief Justice Hughes, in which four of his associates concurred, and one a dissenting opinion by Justice Sutherland, in which three other justices concurred. The case involved the validity of section 4 of Chapter 339 of the Laws of Minnesota of 1933, page 514. · The Minnesota Act was challenged in the courts of that state, and was sustained by the supreme court of Minnesota in 189 Minn. 422, 249 N. W. 334, 86 A. L. R. 1507. An appeal was taken from that decision to the United States Supreme Court, with the result already mentioned.

Chapter 116, supra, the authority for the action of the district court in this case, contains several sections. Sections 1, 2 and 3 are the only ones important here, and they read as follows:

"Section 1. In any action heretofore or hereafter instituted in any District Court for the purpose of foreclosing a mortgage on real estate, the owner or owners of such real estate may, at any time before a sale thereof under a decree or order of the Court in such action, file in such Court an application for an order staying all proceedings in such action until the further order of the Court, which application must set forth fully the reasons why such application is made and why the stay of proceedings should be ordered.

"Sec. 2. When any such application is filed the Judge of such District Court must make an order setting a day for hearing the same, which must be not less than five days nor more than ten days from the date of such order, and a copy of such order, together with a copy of the application must be delivered to the plaintiff in such action, or his attorney, at least three days before the day set for hearing such application, and all proceedings shall be stayed in such action until such application has been heard and an order has been made with regard to the same. Such hearing may be had either at chambers or in open Court.

"Sec. 3. If, on such hearing, it shall appear to the Court, or the Judge thereof, that good and sufficient reasons exist therefor, an order may be made granting a stay of all proceedings in such action until the further order of the Court, but no such order shall stay any such proceedings beyond March 1st, 1935. There must be included in any order staying proceedings such other provisions as the Court, or Judge thereof, may deem necessary and proper with regard to the custody or possession of the property, payment of interest on the debt, payment of taxes, disposition of crops, rents or profits therefrom, or for the preservation or care of the property."

The other sections are formal, or have to do only with matters subsequent to the application and order, and are therefore not important here.

By reason of the fact that respondent relies upon the case of *Home Building & Loan Assn.* v. *Blaisdell,* supra, to support the order of the district court, it is important to consider the Minnesota Act there under consideration, and to ascertain if it is *in pari materia* with our Chapter 116, and, if not, to observe the essential differences between the two Acts. In the consideration of the matter it is important to note that the Minnesota Act contains elaborate recitations of an existing financial depression, and the effects and results thereof. Such statements in fact form the preamble to the Act, and precede and lead up to a positive and emphatic declaration of an emergency, which declaration and finding themselves

create the premise upon which are predicated the legislative enactments that follow.

While the Minnesota Act contains several sections and more than one provision for relief, only one section of that Act, section 4, was under consideration in the *Blaisdell Case*. That section, in effect, confers authority upon trial courts to extend the period of redemption provided by the Minnesota statute for the redemption of real property sold under foreclosure proceedings. The other provisions of the Minnesota law were not under attack or considered in the *Blaisdell Case*.

The Montana Act (Chap. 116) contains neither recitation of emergency considerations nor a finding of emergency. This feature of our law is relied upon by the appellant as a fact distinguishing the Minnesota law and making inapplicable the reasoning of the *Blaisdell Case* to this case as it arose under our Act. Counsel for appellant have urged this difference as a reason for holding our Act unconstitutional. They assert that without the emergency recitations and declarations, the Act must be construed as only what it appears to be on its face—an ordinary legislative enactment subject to the usual constitutional inhibitions.

The Minnesota Act was predicated upon the emergency feature and upon the right of the state to assert its police power for the protection of its citizens. In the brief of the Attorney General of the state of Minnesota filed in the United States supreme court, in support of the decision of the Minnesota court in upholding the law, it is said: "We concede that in normal times and under normal conditions the Minnesota mortgage moratorium law would be unconstitutional. But these are not normal times nor normal conditions. A great economic emergency has arisen in which the state has been compelled to invoke the police power to protect its people in the possession and ownership of their homes and farms and other real estate from the disastrous effects of the wholesale foreclosure of real estate mortgages which inevitably resulted from the statewide, nationwide and worldwide economic depression."

The learned Chief Justice of the United States Supreme Court in the majority opinion bears heavily upon this feature of the case. We are here asked to hold our Act unconstitutional, because of the failure of the legislature to incorporate in the Act the important provisions so emphatically set forth in the Minnesota Act. It is not necessary for us to pass upon that question here, because of the fact that in the present case the issues may be determined without resort to the constitutional objection. This court has consistently refrained from deciding cases upon constitutional grounds, and from declaring legislative Acts as in conflict therewith, unless such a declaration is necessary to a decision of the case before the court. (*Missoula T. & S. Bank* v. *Northern Pacific Ry. Co.*, 76 Mont. 201, 245 Pac. 949; *State* v. *Tesla*, 69 Mont. 503, 223 Pac. 107; *Potter* v. *Furnish*, 46 Mont. 391, 128 Pac. 542; *State* v. *King*, 28 Mont. 268, 72 Pac. 657.) Here such a declaration is not necessary, as we shall attempt to point out later.

Another distinction between the section of the Minnesota Act construed in the *Blaisdell Case* and the Montana Act, Chapter 116, supra, is found in the fact that section 4 of the Minnesota Act provides for the extension of the period of redemption after sale of the property in a foreclosure action. The Montana Act provides for the staying of the proceedings previous to the sale. This difference is relied upon as important and as making inapplicable the declarations in the *Blaisdell Case* to the instant case.

The Montana Act, as must be observed, is only applicable to foreclosure sales in the matter of real estate. In the instant case a real estate mortgage and a chattel mortgage are involved. These mortgages were separate instruments and were filed and recorded as such. It is true that they were foreclosed in one action, and that counsel consented to the inclusion of an order in the decree of foreclosure to the effect that both real and personal property should be sold in one lot or parcel. This order of the court, however, did not make the personal property real estate, and thereby automatically made Chapter 116 applicable thereto.

It is disclosed by the evidence taken at the hearing that the property of respondent affected by the foreclosure, in terms of value, was about three-fourths real estate and one-fourth personal property. Real estate sold at sheriff's sale is not subject to redemption because it is real estate, and personal property is not primarily without redemption merely because it is personal property. One is subject to redemption because of the statute in such case made and provided, and the other is not so subject for the very same good and sufficient reason. So we say that the mere fact that the court even by agreement of counsel ordered all of the property sold together in one parcel did not convert the personal property into real estate. That being the case, it follows that the court did not possess the authority and power under Chapter 116 to stay the proceedings so far as they affected personal property.

Chapter 116 is not mandatory. It directs that certain things preliminary to the actual granting of the stay of proceedings must be done. When, however, it comes down to the question of the order to be made upon an application under the law, the word "may" is used. It is evident that the provision applicable, as we have said, to proceedings for the foreclosure of real estate mortgages only, is lodged within the sound discretion of the trial court. Some months subsequent to the decisions of the United States Supreme Court in the *Blaisdell Case,* the supreme court of Minnesota further construed section 4 of the Minnesota Act. The court there said: "Is the law mandatory that having found such rental value, the court must grant extension of the period of redemption and fix the amount of the rental value or income which, during the extension, the owner must pay? We think not. The thought in both part one and part two of Chapter 339, Laws 1933, is to grant extensions only where equitable grounds exist." The court then proceeded to declare that the extension sought under the situation shown constituted a needless impairment of the contract under consideration. (*Young* v. *Penn Mut. Life Ins. Co.,* (Minn.) 256 N. W. 906, 907.)

In the matter before us we find that there is no substantial ▮ conflict in the evidence adduced at the hearing on the application for the stay. The evidence presents no dispute as to the facts, and therefore we say, in accordance with previous declarations, that this court is in as favorable a position to apply the law as was the district court, and in such an instance will not hesitate to do so. (*In re Wadsworth Estate,* 92 Mont. 135, 11 Pac. (2d) 788; *Davidson* v. *Stagg,* 94 Mont. 272, 22 Pac. (2d) 152, and cases therein cited; *Birdwell* v. *Three Forks Portland Cement Co.,* ante, p. 483, 40 Pac. (2d) 43.) It is the duty of this court, in an equity proceeding such as this, to review and determine the sufficiency of the evidence introduced to sustain the order or judgment appealed from.

A careful consideration of the law and the facts herein convinces us that the decision of the United States Supreme Court in the *Blaisdell Case,* supra, is not sufficiently in point in the construction of the Minnesota Act to create a controlling precedent and justification for the ruling of the district court in this case. Our law, Chapter 116, supra, with its limited provisions, is essentially different from the Minnesota law. These considerations, when taken in connection with the facts of this case, lead us to the conclusion that the district court was in error in granting a stay of proceedings. The stay was improperly made and should be set aside.

The order is reversed and the cause remanded to the district court, with direction to set the order aside.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES MATTHEWS, MORRIS and ANDERSON concur.