YELLOWSTONE BANK, COLUMBUS, MONTANA, A CORPORATION, PLAINTIFF AND RESPONDENT, v. STATE BOARD OF EQUALIZATION OF THE STATE OF MONTANA; AND J. F. REID, W. J. WINTERS, AND E. J. BYRNE, AS MEMBERS OF AND CONSTITUTING THE SAID STATE BOARD OF EQUALIZATION OF THE STATE OF MONTANA, DEFENDANTS,

STILLWATER COUNTY, MONTANA, A MUNINCIPAL CORPORATION AND POLITICAL SUBDIVISION OF THE STATE OF MONTANA; ALICE MARVIN, AS COUNTY TREASURER OF SAID STILLWATER COUNTY, MONTANA, A MUNICIPAL CORPORATION; THE

STILLWATER COUNTY, Montana, BOARD OF EQUALI-
ZATION; and HARRY T. BROWN, ERNIE HUDSON and
TED KEATING, as Members of the Stillwater County,
Montana, Board of County Commissioners, and Ex-Officio
Members of and constituting the said Stillwater County,
Montana, Board of Equalization, Defendants and Appel-
lants.

No. 10024.
Submitted October 15, 1959. Decided April 29, 1960.
Dissenting opinion filed May 4, 1960.
351 Pac. (2d) 904.

Henry I. Grant, Jr., County Atty., Columbus, for appellants.

E. A. Blenkner, Columbus, Wesley W. Wertz, Helena, for respondent. Wesley W. Wertz argued orally.

HONORABLE W. W. LESSLEY, District Judge, sitting in place of MR. CHIEF JUSTICE HARRISON, delivered the Opinion of the Court.

This is an appeal from a judgment entered in the District Court of the Thirteenth Judicial District in favor of the plaintiff, Yellowstone Bank of Columbus and against the defendants, Stillwater County, et al.

In this cause, the plaintiff and respondent Bank (hereinafter simply referred to as respondent), after assessment of its surplus by the Stillwater County assessor at 30 percent, paid its tax under protest; subsequently, it filed its complaint and later its amended complaint. The defendants and appellants (hereinafter referred to as appellants), Stillwater County, Montana, Alice Marvin, then County Treasurer of Stillwater County, the Stillwater County Board of Equalization, and Harry T. Brown, Ernie Hudson and Ted Keating, as members of the Board of County Commissioners of Stillwater County, Montana, and ex-officio members of and constituting the Stillwater County, Montana, Board of Equalization together with the State Board of Equalization filed their demurrer, which was overruled by the trial court.

The State Board of Equalization then filed an answer, taking the same legal position as the respondent Bank. The appellants chose to stand on their demurrer, and judgment was entered by the lower court for respondent Bank and against appellant Still-

water County. The case comes here on appeal from the trial court's ruling on the demurrer and its subsequent judgment.

This case is concerned with the fixing of the value of bank shares for purposes of taxation.

In accordance with Chapter 172, Session Laws of 1957, the Board had directed the county assessor of Stillwater County to fix the basis for imposition of taxes of the "moneyed capital" of the plaintiff Bank as follows: $100,000 in "Class 5", and $127,277 in "Class 4". The use of the words "Class 5" and "Class 4" is nothing more than a simple method of referring to the application of 7 percent and 30 percent of true and full value in determining the "basis for imposition of taxes" with respect to "moneyed capital and shares of banks" under section 84-308, as amended by Chapter 172 of the Session Laws of 1957.

The County authorities refused to follow the provisions of the new law and also refused to follow the directions of the Board that the new law, Chapter 172, must be followed.

We shall not concern ourselves with whether the county officials may disregard the instructions of the Board of Equalization or whether the county has sufficient standing to challenge the constitutionality of a legislative act. We shall assume, without deciding these matters, and go directly to the merits of the statutes involved.

The law we are here concerned with is section 84-308, which was the governing law from 1929 until amended in 1957. Before amendment in 1957, it read as follows:

"As a basis for the imposition of taxes upon the different classes of property herein specified, a percentage of the true and full value of each class shall be taken as follows:

"Moneys and credits, seven per centum (7%) of true and full value.

"Moneyed capital and shares of banks, both national and state, thirty per centum (30%) of true and full value."

Chapter 46 of Title 84, Revised Codes of Montana 1947, now sections 84-4601 to 84-4605, R.C.M. 1947, is the basic statutory

authority in this area. This law is designed to comply with and meet the demands of the Federal law. The Federal statute is section 5219 of the Revised Statutes of the United States (section 548 of Title 12 of United States Code). It may be paraphrased as allowing a state to tax the shares of national banks, or follow three other alternatives, not relevant here; but use of one is and must be in place of all others. The State of Montana taxes the shares of national banks and imposes the same tax on state banks. The bank shares are the property of the owner of the shares.

The specific law on which this case is centered is the amendment to section 84-308. This amendment is Chapter 172 of the Session Laws of 1957. As Senate Bill 15, it was introduced, passed and signed by the governor into law on March 8, 1957. We set it out in full:

"84-308 (2000.6) *Basis for imposition of taxes on moneys and credits, moneyed capital and bank shares.* As a basis for the imposition of taxes upon the different classes of property herein specified, a percentage of the true and full value of each class shall be taken as follows:

" 'Money and credits, seven per centum (7%) of true and full value.

" 'Moneyed capital and shares of banks, both national and state, thirty per centum (30%) of true and full value on that portion of the true and full value not represented by surplus, as shown on the books of the bank; seven per centum (7%) on that portion of the true and full value represented by surplus as shown on the books of the bank; provided that on that portion of any of such surplus which is over and above the amount represented by the stated capital of a bank, the excess shall be subject to thirty per centum (30%) of true and full value. The state board of equalization shall prepare, distribute and cause to be used such forms as it may require to obtain from the banks doing business in this state reports of such facts

and figures as may be necessary to ascertain the taxable value of bank shares as a basis for the imposition of taxes.' ''

With the original law and the amendment before us, we may epitomize its meaning and effect. Section 84-302 specifies classes as the basis for the imposition of taxes. The classification of ''moneyed capital'' and shares of banks is fixed by section 84-308; this effect has not been changed by the amendment, and a review of the statutes will show that the ''basis'' as set out in section 84-308, as amended, corresponds with Classes 4 and 5 that appear in section 84-302. However, we have on our statute books special classification laws relating only to moneys and credits, money capital and bank shares; it is Chapter 64, Session Laws of 1929, now sections 84-303 to 84-308; section 84-308, as amended, of course being the law construed and passed upon in this decision. A reading of Chapter 64 must make it clear that it does not relate itself specifically to our original classification law and the several different classes of property specified. Thus, it must be clear that the State Board of Equalization's use of the terms ''Class 4'' and ''Class 5'' is a term of reference on application of 7 percent and 30 percent of true and full value in determining the basis for tax imposition as to moneyed capital and shares of banks under the law with which we are here concerned.

It is true, section 84-4605 makes this reference: ''such moneyed capital to be ascertained as provided by section 84-301''. This is ineffective because of the operative effect of sections 84-304 and 84-305, since their enactment in 1929.

The above constitutes the legislative and factual background of the amendatory law we now consider.

Two specifications of error are raised in this appeal:

1. That Chapter 172 was not effective until approved by the governor; that he did not approve it until March 8, 1957; that this was after the first Monday in March (March 4, 1957) the time the tax lien attached; that after lien time, no one may diminish that obligation; that this amendment seeks to do that

and is thus in direct conflict with section 39 of Article V of the Constitution of the State of Montana.

2. That Chapter 172 is unconstitutional, in that it allows portions of bank property — a part of the surplus to be taxed at a lower rate than other property in the same class, to-wit: property in the "moneyed capital" class. This is claimed to be a discrimination as to taxation within a class, a discrimination clearly prohibited by sections 1, 11, and 17 of Article XII of the Constitution of the State of Montana.

The additional specification of error, that Chapter 172, Session Laws of 1957 is unconstitutional, in that it is a graduated ad valorem tax in reverse, is not advanced with much force and effect, and is in fact abandoned in appellants' argument.

We consider the first contention of the appellants.

The first Monday in March is significant to determine and fix the situs and ownership of property for tax purposes. Sections 84-406 and 84-409, R.C.M. 1947; Ford Motor Co. v. Linnane, 102 Mont. 325, 57 P.2d 803; Hayes v. Smith, 58 Mont. 306, 192 P. 615. To place other significance upon that date is to isolate it from the total taxing process and procedure and to ignore other vital and subsequent steps in the process.

The "assessing" of the property is done after situs is acquired. Sections 84-406 and 84-409, R.C.M. 1947. The shares of a bank are assessed under Chapter 46, Title 84, R.C.M. 1947; the assessing is not done until the statements are furnished by the banks (both state and national), five days after demand, or assessment by assessor in case of failure of the banks to furnish the statements.

The "basis for imposition of taxes" becomes important when levies are made. It is evident that changes by the Legislature affecting this "basis" if effective before time of levying taxes are in time to affect the taxes for that current year.

Assessors, when they make their annual assessments, determine and assign the percentage basis of true and full value as provided in section 84-302. See section 84-402, R.C.M. 1947. Section

84-302 is a part of the general classification law. Of course, bank shares are not included in the general classification law, of which section 84-308, as amended, is a part. Thus, it can be seen the assessor's one responsibility, in determining and assigning the percentage basis of true and full value of bank shares, is to determine and assign, under section 84-308, as it is at the time of the annual assessment of bank shares; this is a time subsequent to the first Monday in March, by many days. Though details have been altered in the process, the statement from Butte Electric Ry. Co. v. McIntyre, 71 Mont. 21, 24, 227 P. 61, 62, is most apropos. "It will thus be seen that the classification statute has nothing whatever to do with the assessment of property or the determination of assessed value."

Succinctly stated, when the time had arrived to determine the taxable value of the bank shares in the year 1957, Chapter 172 was in full force and effect; it was in effect when the time arrived in the year 1957 for computing and for levying the taxes for that year. This was, and is, a classification law; it is applied after the first Monday in March as the subsequent steps of assessing, computing, and levying are carried on to the inevitable end. The force of this point of view is not destroyed by admitting the obvious, i. e., that the tax lien attached to the taxed property as of the first Monday in March (March 4, 1957).

Section 39 of Article V of our Constitution provides that "no obligation or liability of any person, association or corporation, held or owned by the state, or any municipal corporation therein, shall ever be exchanged, transferred, *remitted, released* or postponed, or in any way diminished by the legislative assembly; nor shall such liability or obligation be extinguished, except by the payment thereof into the proper treasury." Emphasis supplied.

Does Chapter 172 amount to or result in remitting, releasing, or diminishing an "obligation or liability" held or owned by the state or city? Our court has said a lien is not an obligation, in that it has held the cancellation of a lien is not the cancellation of an obligation due the State. Christofferson v. Chouteau

County, 105 Mont. 577, 74 P.2d 427. Here the taxes were not yet due and payable on March 8, 1957, which is the effective date of the statute; they had not even been levied; the cancellation of the lien would not in any way cancel the obligation due. We must reject this contention of the appellants.

We shall consider and answer the constitutional questions raised. We do this, well aware of the guiding rule, as set out in Dickey v. Board of Com'rs, 121 Mont. 223, 191 P.2d 315, 317, that "the universal rule is that the constitutionality of a statute will not be determined in any case unless such a determination is absolutely necessary to a decision upon the merits of the action." Here the necessity exists.

We answer, categorically, the question: Is the statute constitutional?

The constitutional stricture by which we measure our statute is the well-known section 11 of Article XII of the Montana Constitution, which provides that "Taxes shall be levied and collected by general laws and for public purposes only. They shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax."

The appellants present the constitutional question with a double entry. First, this is not a classification statute, but an exemption statute and, as thus, is clearly unconstitutional under the rule enunciated in Victor Chemical Works v. Silver Bow County, 130 Mont. 308, 301 P.2d 730. Second, appellants state that if this is a classification statute, it is contrary to section 11 of Article XII of the Montana Constitution. We shall consider both viewpoints together.

It is a fallacious argument to insist there was no change in section 84-301, in respect to classification. A consideration of the facts and events makes evident this fallacy. Class Six was a "dead letter" lifeless and inert, even though still on the statutes, because of the decision of the Supreme Court of the United States in Commercial National Bank of Miles City v. Custer County, 76 Mont. 45, 245 P. 259; 275 U.S. 502, 48 S.Ct. 155, 72

L.Ed. 395, and subsequent Montana decisions that conform to it. See First National Bank of Plains v. Sanders County, 85 Mont. 450, 279 P. 247; State ex rel. Conrad Banking Corporation of Great Falls v. Mady, 83 Mont. 418, 272 P. 691.

The Legislature by section 1, Chapter 88, Laws of 1957, amended section 84-301 as follows: "Class Six. Property formerly included in this class *is now classified by Section 84-308 of the Revised Codes of Montana, 1947.*" Emphasis supplied.

A practical reading, of the amendment under consideration, makes it evident that all bank shares and "moneyed capital" are affected by it; all bank shares and "moneyed capital" of banks are subject to the same classification. The Legislature may devise its own formula to determine the basis for the imposition of taxes on the property in question, namely, bank shares and "moneyed capital". This court has said, "The whole matter is left to the discretion of the legislative power, and there is nothing to forbid the classification of property for the purposes of taxation and the valuation of different classes by different methods. The rule of equality, in respect to the subject, only requires the same means and methods to be applied impartially to all the constituents of each class, so that the law shall operate equally and uniformly upon all persons in similar circumstances." Hilger v. Moore, 56 Mont. 146, 172, 182 P. 477, 483.

We will not here concern ourselves as to the wisdom of the legislative act. The formula the Legislature originates as set out is for the Legislature not for this court. We are concerned only with the taint of inequality. See Bank of Miles City v. Custer County, 93 Mont. 291, 19 P. 2d 885; we find none here.

It has been suggested also, that this is an exemption statute, such an exemption statute as was struck down in the Victor Chemical Works case, supra. We do not so find. It is a classification statute. Its formula is not fraught with constitutional inequality. This statute is constitutional.

The demurrer was properly overruled. The judgment · is affirmed.

MR. JUSTICES ANGSTMAN and CASTLES concur.

MR. JUSTICE BOTTOMLY dissenting:

This appeal involves the validity of the "Bankers Relief Act", being Chapter 172, Laws of 1957, and section 84-308, R.C.M. 1947.

The determination of the appeal vitally affects every taxpayer in the entire State of Montana.

The majority opinion asserts that this case merely concerns the fixing of value of *bank shares* for purposes of taxation. This constitutes the basic error upon which the opinion rests. The case presents the problems of the *classification,* for tax purposes, of *moneyed capital and shares of banks, both national and state.* The difference is vitally important as we shall later show.

Two questions are presented. The most important question, and that which must first be answered, directly questions the constitutionality of the Act.

To comprehend the constitutional question presented it is essential that a history of the taxation of moneyed capital and bank shares should be set out.

Prior to the enactment of the classification act being, Chapter 51, Laws of 1919, property in Montana was not classified for taxation purposes; that is, all property was assessed and taxes were then levied upon the entire assessed value of the property.

The Classification Act of 1919, held constitutional by the case of Hilger v. Moore, 56 Mont. 146, 182 P. 477, provided that designated types of property should be assigned to specified classes. A percentage of the true and full assessed value was then applied to the classified property for purposes of the levy and collection of taxes. In the original act, as pertinent here, Class 5 provided that it should include the following: "All moneys and credits, secured or unsecured, including all state, county, school district and other municipal bonds, warrants and securities without any deduction or offset; provided, however, that the terms, moneys and credits as herein used shall not em-

brace the moneyed capital employed in the banking business by any banking corporation association or *individual* in this state." Emphasis added.

Class 6 of the law provided that the following property should be included. "The shares of stock of national banking associations, and the *moneyed capital employed in conducting a banking business by any other banking corporation, association or individual in this state.* Such moneyed capital to be ascertained by deducting from the monies and credits of such banking corporation, association or individual, the amount of the deposits and any indebtedness representing money borrowed for use in said business, and the value of the shares of any national banking association, to be ascertained by deducting the value of all real estate of such association." The percentage of assigned value for Class 5 property was 7% of its true and full value. The percentage of assigned valuation for Class 6 property was 40% of its true and full value.

In Hilger v. Moore, supra, it was asserted that applying the assigned percentages of value to assessed value and thus reducing the value upon which the tax levy should be made contravened Sections 1 and 11 of Article XII of the State Constitution. Those sections provide:

"Section 1. The necessary revenue for the support and maintenance of the state shall be provided by the legislative assembly, which shall levy a uniform rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property, except that specially provided for in this article. The legislative assembly may also impose a license tax, both upon persons and upon corporations doing business in in the state."

"Sec. 11. Taxes shall be levied and collected by general laws and for public purposes only. They shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax."

The court in holding that the classification statute was con-

stitutional and that these different percentages of value may be assigned to property and still maintain the uniformity demanded by our State Constitution said [56 Mont. 146, 182 P. 481] :

"Construing the first sentence of section 1, with scetion 11 the meaning is reasonably clear: The taxes levied shall be uniform upon the same class of property within the same taxing district. The entire state is one district for the purpose of raising state taxes. Every county is a separate district for county taxes, every city for city taxes, etc. Or, stating the principle of sections 1 and 11 in different form, the mandatory injunction to the legislature is that it shall prescribe such uniform mode of assessment as shall secure a just valuation of all taxable property that all taxes shall be levied and collected by general laws and for public purposes only, and *that they shall be uniform upon the same class of property within the territorial limits of the authority levying the tax.* This is the rule of uniformity declared by our Constitution, if we are able to determine the intention of its framers aright. * * * It is enough that there is no discrimination in favor of one as against another of the same class".

In the case of Commercial National Bank of Miles City v. Custer County, 76 Mont. 45, 245 P. 259, a National Bank questioned whether the classification statutes discriminated against the shares of the capital stock of National Banks in the imposition of taxes. In that case the National Bank showed that there were individuals and other banking type associations who were using capital in competition with them but were being taxed in Class 5 at the rate of 7 % of the true and full value of their moneyed capital, whereas, the bank shares were being taxed at 40 % of their true and full value. Bank shares, by specific statutory provisions, are taxed to the bank and not to the individual owner of the shares.

A formula as to how these shares are to be valued and taxed to the bank is set out by the statutes of the State of Montana. See sections 84-4601 to 84-4605, R.C.M. 1947. In the Custer County case the bank's position was that individuals, and other

corporations and associations, were using moneyed capital and competing with the banks but were being taxed on this moneyed capital at a lesser rate than the bank.

The Montana Supreme Court took the position that the money was invested money and not money employed in competition with the business conducted by the National Banking Corporation, and held that discrimination did not exist. The bank appealed the decision of the Montana Supreme Court to the Supreme Court of the United States, since a federal question was involved. That court reversed the decision of the Montana Supreme Court upon authority of First National Bank of Hartford, Wis. v. City of Hartford, 273 U.S. 548, 47 S.Ct. 462, 71 L.Ed. 767, and State of Minnesota v. First National Bank, 273 U.S. 561, 47 S.Ct. 468, 71 L.Ed. 774.

In the Hartford case, supra, 273 U.S. at page 558, 47 S.Ct. at page 465, the Supreme Court, in speaking about section 5219 of the Revised Statutes of the United States, said, "It was intended to prevent the fostering of unequal competition with the business of national banks by the aid of discriminatory taxation in favor of capital invested by institutions or *individuals* engaged either in similar businesses or in particular operations or investments like those of national banks. Mercantile Bank v. New York, supra, 155 | 121 U.S. 138, 7 S.Ct. 826.] With the great increase in investments by individuals and the growth of concerns engaged in particular phases of banking shown by the evidence in this case and in State of Minnesota v. First National Bank of St. Paul, [273 U.S. 561, 47 S.Ct. 468, 71 L.Ed. 774], today decided, discrimination with respect to capital thus used could readily be carried to a point where the business of national banks would be seriously curtailed. Our conclusion is that section 5219 is violated wherever capital, substantial in amount when compared with the capitalization of national banks, is employed either in a business or by *private investors* in the same sort of transactions as those in which national banks engage and

in the same locality in which they do business." Emphasis added.

We see then that the United States Supreme Court decision held that unless moneyed capital of individuals, corporations, and associations who were not banks, but competing with the banks was not classified and taxed identically the same as national banks, then the national banks would be discriminated against and the tax illegal. The confusion this decision caused is evident from the later case of State ex rel. Conrad Banking Corp. of Great Falls v. Mady, 83 Mont. 418, 272 P. 691, where the Montana Supreme Court held that since the Supreme Court of the United States had said that a discrimination was apparent between *private* individuals who were in *competition with the National Banks* and *therefore had to be taxed the same as the private individuals* that it then became improper to tax the state banks at a higher level than the National Banks. The facts of this case showed that assessors in order to avoid the discrimination condemned by the U.S. Supreme Court had lowered all National Bank assessments to 7% or the same value as money and credits in Class 5. This left only the state bank shares and moneyed capital in Class 6. The State Bank showed the discrimination and the court held the State Bank must be taxed at 7% saying at page 425 of 83 Mont., at page 694 of 272 P.:

"Our Constitution commands the taxation of all property which is not exempt. It is desirable, if not imperative, for the state to tax national bank shares. These constitute a considerable percentage of the taxable wealth of the state, and national banks under our present system are an essential cog in the business wheel. In order to tax the shares pursuant to the act of Congress, and that there shall not be any discrimination against them, nor in their favor, it is obvious that national bank shares, state bank shares, the moneyed capital employed in conducting a banking business by corporations in this state, and *moneyed capital in the hands of individual citizens of this state* coming into compe-

tition with the business of banks, national and state, *should be classified alike, and taxed upon the same percentage of value."* Emphasis added.

To further illustrate that this question of discrimination between competing properties in Class 6 of section 84-301, R.C.M. 1947, is not one of original impression in this state is the case of Montana National Bank of Billings v. Yellowstone County, 78 Mont. 62, 252 P. 876, 882. There a national bank brought to this supreme court the question as to whether or not it was being discriminated against when state banks were allowed to deduct the value of the United States Government securities held by them when computing the value upon which their property was to be assessed whereas the value of United States Government securities held by national banks was included in the measure of assessed value of the stock of national banks for taxation purposes. The court held that "By the Constitution the state is commanded to tax the property of the banks—the corporations—and also the shares, if they have a value independent of the taxable property of the bank. It cannot tax the property to the banks and at the same time tax the shares to the extent that the property is taxed, but it can tax the property, and also the shares to the extent that they have a value above and beyond the property of the bank which has been taxed. And it may tax the shares to that extent without reference to the character of the securities which go to make up the value which the shares have over and above the taxable property of the bank. [Citing cases.]"

They there held that a precedent had been overlooked in the decision of the case of East Helena State Bank v. Rogers, 73 Mont. 210, 236 P. 1090, and that because of that fact that case had indicated that the value of federal securities could not be used in measuring the value of the shares of stock of the banks over and above the taxable property of the bank itself. The court repudiated this statement and held that it was an error upon the part of the taxing officials to omit the value of the Federal

Securities when assessing the state banks. However, they held that since the value of the Federal Securities *should not* have been omitted for assessment purposes, the national banks were not discriminated against and were without any remedy. The case was appealed to the Supreme Court of the United States which in effect affirmed the holding of the State that in respect to the taxation of state corporate banks the shares must be taxed as they are in the case of national banks so far as necessary to prevent discrimination, and that in neither case does the exemption of federal securities apply in the taxation of such shares. They held, however, that the national bank *was not without a remedy* since the taxes had been assessed against the state bank without considering the value of the federal securities, and against the national bank by taking into consideration the value of the federal securities, and that since such assessments were made by the county authorities following a ruling of the supreme court of the State of Montana, which was in error, that the national banks who were discriminated against by such action of the county officials could recover the taxes which they had paid under protest and which taxes as so computed were discriminatory in respect to the taxes which were paid by the state banks in the same classification. This result was deemed essential because the supreme court pointed out that even though the taxing officers of the county, in view of the later decision of the Montana Supreme Court had the power to tax the shares of state banks as they were taxing the shares of national banks and that therefore equality would be effected, nevertheless, *it nowhere appeared that the county taxing officers had undertaken to exercise that power or that they had any intention of doing so.*

These cases form a definite pattern. *The rule of law therein set out that taxation of all property included within the class must be uniform has until now never been overruled.* In addition the basis upon which the property has been taxed has been held reasonable.

Following the decisions in the cases holding that discrimination within the class exisited, the problem of how equality should be effected was presented. The course pursued was to lower the percentage on the discriminated property to that percentage assigned the favored property. See State ex rel. Conrad Banking of Great Falls v. Mady, supra. It was determined however that this solution was unsatisfactory and thus Chapter 64 of the Laws of 1929, added what it was felt was clarifying legislation in respect to properties included within Classes 5 and 6.

The first two provisions defined types of property. Section 84-303, R.C.M. 1947, defines moneys and credits saying: ''That moneys and credits are hereby defined for the purpose of taxation as all moneys not constituting moneyed capital as hereinafter defined, and all credits secured and unsecured, including all state, county, school district and other municipal bonds, warrants and securities, without any deduction or offset; provided, however, that credits, as herein defined, shall not embrace credits constituting moneyed capital as hereinafter defined or evidence of debt secured by mortgage of record upon real or personal property in the state of Montana.''

Section 84-304, R.C.M. 1947, defines moneyed capital as:

''Moneyed capital is hereby defined as *moneys, bonds, notes and other evidence of indebtedness, including evidences of indebtedness secured by mortgage on real or personal property in the hands of individual citizens and corporations coming in competition with the business of national banks or employed in conducting a banking or investment business;* provided, however, *that bonds, notes and other evidence of indebtedness in the hands of individuals and corporations not employed or engaged in the banking or investment business* and representing merely personal investments not made in competition with such business *shall not be deemed moneyed capital.''*

This definition follows in part the federal statutes wherein they set out those items which must be taxed exactly as the shares of national banking corporations are to be taxed and

without discrimination. The next three sections related to deductions to determine assessed value and are not pertinent here. Section 84-308, R.C.M. 1947, before the amendment by the Banker's Relief Act was the concluding section and set out that "As a basis for the imposition of taxes upon the different classes of property herein specified, a percentage of the true and full value of each class shall be taken as follows:

. "Moneys and credits, seven per centum (7%) of true and full value.

"*Moneyed capital and shares of banks, both national and state, thirty per centum (30%) of true and full value.*"

This section repealed a portion of section 84-302, R.C.M. 1947, by effecting a 10 percent reduction on Class 6 property. Section 84-302 in part provided that the percentage value of Class 6 property was 40 percent. By the enactment of section 84-308, R.C.M. 1947, this percentage value became 30 percent. These amendments did not add nor subtract property from Class 6. The class still included bank shares of both national and state banks and in addition all moneyed capital of bank corporations, associations, and *individuals* when such moneyed capital was employed in the banking business or competition with the banking business. The amount which could be assigned to the class had never been in question as long as the persons in the class and who should correctly and necessarily be within the class had all been classified therein. The original change setting out the new basis did not effect a change in the property *necessarily* included within the class. The class generally speaking included the shares of banks both national and state and moneyed capital. Now moneyed capital by section 84-304, R.C.M. 1947, is: money, bonds, notes or other evidences of indebtedness including evidence of indebtedness secured by mortgage on real or personal property *in the hands of individual citizens and corporations coming in competition with the business of national banks or employed in conducting a banking or investment business.* In Class 6 of section 84-301, R.C.M. 1947, it is set out that included

within the class is moneyed capital employed in conducting banking business *by any other banking corporation, association or individual in this state.* We perceive then that this classification includes three general classes, the shares of stock of both national and state banks and the moneyed capital of both national and state banks and the moneyed capital of any other person, corporation or association if such moneyed capital is used in competition with the national and state banks. *All of these properties must be taxed alike in order to avoid discrimination against any of the property necessarily included in the Class.* The 1929 Act was tested in the case of Bank of Miles City v. Custer County, 93 Mont. 291, 19 P.2d 885, 887. In that case the appellant contended that the laws enacted created and discriminated in favor of moneys and credits owned by individuals and corporations other than national and state banks and those in the hands of corporations coming into competition with the business of national banks who were employed in conducting a banking or investment business. That for this reason the Act was void because it contravened section 11, Article XII, of the State Constitution. In that case, the bank was contending that the legislature could not split up moneys and credits into two categories or two classifications. They were contending that moneys and credits constituted one thing and one thing only and that they could not be classified differently within the class. In speaking of classification in regard to moneys and credits, the court said: ''The use to which the property is devoted and its productivity constitute the measuring stick in determining its proper classification. [Citing cases.]''

They said, ''Moneys and credits, when employed in the banking business or in a business in competition therewith, have a greatly increased productivity as compared to moneys and credits in the hands of the ordinary individual or corporation using them for casual investment only. The bank uses its moneys as a stock in trade, and through its use buys and sells securities and commercial paper for profit, purchases notes at a dis-

count, makes short-time loans, whereby it is enabled to secure interest or profit and reinvest it many times during a given year. By reason of these banking practices, careful investment in a banking business during the course of a year's time yields a much larger income on a percentage basis than the same money yields in the hands of the casual investor. The use of the money by a bank as compared to the occasional investor, is essentially different and results in greater productivity; because thereof a substantial reason exists as a proper foundation for the division of moneys and credits into two classes for the purposes of taxation. * * * We therefore conclude, and so hold, that moneys and credits may be classified for purposes of taxation in different classes, where, as here, by reason of the difference in the use and productivity of the same, a substantial reason exists as a foundation for such classification.''

Following this decision and until 1957, no important changes were made in the taxation of Class 6 property.

After this decision the law was settled that the classification was reasonable, the percentage value assigned the classified property was proper and the state taxing statutes did not provide for any discrimination against any of the property necessarily included within Class 6.

Then came the ''Banker's Relief Act''. *This law provides relief for the banks and only for the banks.* Section 84-308 reads as follows:

''84-308. (2000.6) *Basis for imposition of taxes on moneys and credits, moneyed capital and bank shares.* As a basis for the imposition of taxes upon the different classes of property herein specified, a percentage of the true and full value of each class shall be taken as follows:

''Moneys and credits, seven per centum (7%) of true and full value.

''Moneyed capital and shares of banks, both national and state, thirty per centum (30%) of true and full value on that portion of the true and full value not represented by surplus,

as shown on the books of the bank; seven per centum (7%) on that portion of the true and full value represented by surplus as shown on the books of the bank; provided that on that portion of any of such surplus which is over and above the amount represented by the stated capital of a bank, the excess shall be subject to thirty per centum (30%) of true and full value. The state board of equalization shall prepare, distribute and cause to be used such forms as it may require to obtain from the banks doing business in this state reports of such facts and figures as may be necessary to ascertain the taxable value of bank shares as a basis for the imposition of taxes."

What it does is this: As to a bank, after the assessed value of "moneyed capital" is determined, a percentage of 30 percent of assessed value is assigned for tax purposes to that portion of the moneyed capital not represented by surplus. As to that portion which constitutes surplus, however, the percentage of assigned value for tax purposes is 7 percent up to the *stated capital of a bank.* On the portion of surplus in excess of the *stated capital of a bank,* the percentage assigned is again 30 percent. This is an obvious and *patent discrimination in favor of the banks and against individual citizens and corporations in competition with banks or employed in conducting a banking or investment business.* How can an individual or corporation take advantage of the percentage reduction *given* to the banks? The corporations would seldom if ever have a stated *bank* capital. The individual can never have a "stated bank capital." To read the law without more is to see its obvious discrimination. This discrimination offends and *is in contravention of sections 1 and 11, Article XII of the Constitution of the State of Montana.* The law in question presents in substance the very same scheme which this court struck down in Victor Chemical Works v. Silver Bow County, 130 Mont. 308, 301 P.2d 730, with one exception. Whereas in the Victor Chemical case the property was to be subject to double classi-

fication for only three years, here the property is to be classified at two rates in apparent *perpetuity*. Here, as in that case, the 7% value percentage assigned a portion of the property in the class bears no relation at all even by implication to the productivity or the use of the property separately classified. As said in the Victor Chemical case, 130 Mont. at page 318, 301 P.2d at page 735, *"We can not agree* that such a reclassification of property already once classified for the purpose of taxation is reasonable or consistent with our Constitution." To paraphrase the United States Supreme Court, "To hold otherwise would be to exalt artifice above reality and to deprive the statutory provision in question of all serious purpose." See Gregory v. Helvering, 293 U.S. 465, at page 470. Upon the authority of Victor Chemical Works v. Silver Bow County alone, Chapter 172, Laws of 1957, must and should be held unconstitutional.

When as here a tax law has been judicially determined to be reasonable, just and without discrimination serious questions arise when changes are made providing special tax benefits to special classes. It is urged that the law would serve a purpose beneficial to the banking industry. I do not subscribe to the theory however that what is good for the banks is always good for the people of the State of Montana. At the time this decision is written the economic status of the State of Montana is extremely bleak. While the future is uncertain it is obvious that this is not an opportune time to contract the tax base of the state. While taxes are saved by this law for the benefit of a specific segment of our state industry, it is obvious that other taxpayers must make up the deficits thus created in our governmental budgets. The majority of the taxpayers surely cannot afford these additional taxes as well as the banks could. The Act in question here tampered with the tax laws and introduced an element of uncertainty into a law that was formerly stable. An "escalator" clause such as now in section 84-308, R.C.M.1947, to me seems to open the door so that everyone with

a special interest to promote legislation can gain his own special tax advantage. If a law held reasonable at 30 percent can legally be held reasonable at 7 percent where does the certainty required in tax law become fixed. If the "escalator" can go down, can it not go up? If 7 percent is reasonable is not 70 percent? If the tax classification law can be said to allow a graduated tax within a class are other graduated property taxes to be held legal? The holding in the majority opinion raises these questions. In my opinion, the majority opinion far exceeds the boundaries of legality afforded the Classification Act by Hilger v. Moore, supra.

I believe something should be said also about the majority holding that the new law took effect in the year 1957.

Contention is made by appellant that the tax classification and assigned percentage values became fixed upon the first Monday of March 1957 or "Tax Day". The banks and the state board of equalization contend this is not so. If, however, the bank's contention is valid then, what is the correct day? The majority answers this by saying it is not the first Monday in March. This is not an answer at all. If the majority reasoning is sound, they should be able to point to *the* exact day that taxes became fixed. To simply say "no" without more does not constitute the answer which the taxpayers of this state deserve and require. The majority will not point to any other time to fix the tax because they cannot show another tax time yet refuse to recognize that the appellant is correct. I would reverse the judgment of the district court and direct that a judgment for appellant be entered upon the ground that Chapter 172, Laws of 1957, is unconstitutional.

MR. JUSTICE ADAIR:

I concur in the foregoing dissenting opinion by Mr. Justice Bottomly.