No. 12363

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

THE STATE OF MONTANA ex rel.,
EARL H. HAMMOND,

Petitioner,

-vs-

RAMALDUS G. HAGER and MAGELIN HAGER,
and THE DISTRICT COURT OF THE NINTH JUDICIAL
DISTRICT OF THE STATE OF MONTANA, IN AND FOR
THE COUNTY OF TETON and THE HON. R. D. McPHILLIPS,
JUDGE THEREOF,

Defendants.

---

ORIGINAL PROCEEDING:

Counsel of Record:

For Appellant:

Hoyt, Bottomly and Gabriel, Great Falls, Montana.
John C. Hoyt argued, Great Falls, Montana.

For Respondents:

Jardine, Stephenson, Blewett and Weaver, Great Falls
Montana.
L. Morris Ormseth argued, Great Falls, Montana.

---

Submitted: October 16, 1972

Decided: NOV 1 4 1972

Filed: NOV 1 4 1972

Thomas J. Kearney
Clerk

Mr. Chief Justice Harrison delivered the Opinion of the Court.

This is an original proceeding involving the civil action of Earl H. Hammond, plaintiff,v. Ramaldus G. Hager and Magelin Hager, defendants, filed in the district court of Teton County. Here petitioner, Earl H. Hammond, seeks an appropriate writ directed to defendants Hager, the district court, and the judge thereof to correct an alleged erroneous ruling by the district court.

It appears from the complaint in the district court action that Hammond was employed by the Hagers on their ranch as a ranchhand, and his duties included irrigation; that on the day of his injury he was supplied with a Honda motorcycle for transportation instead the usual car or pickup. He alleges he was unfamiliar with the operation of the motorcycle and in such operation he was thrown from the Honda and sustained injuries for which he seeks damages.

The Hagers by answer, plead the defenses of assumption of risk and contributory negligence. Thereafter, Hammond amended his complaint by adding a new count setting forth that Hammond was engaged in a hazardous occupation while employed by the Hagers who did not carry industrial accident insurance or elect to come under the Workmen's Compensation Act. Thereafter Hammond moved the district court to dismiss and strike from the Hagers' answer their defenses that petitioner assumed the risk and was guilty of negligence (not willful) which contributed to his injuries.

As a basis for this motion Hammond contended the statutes of Montana require that all persons engaged in hazardous occupations must carry industrial accident insurance, and failure to do so excludes as defenses in a personal injury action the negligence of the employee and his assumption of risk; but admittedly those statutes exclude employers engaged in farming and stock raising. Hammond contends that such exclusion is not a legitimate

- 2 -

classification; that it is arbitrary and unreasonable; and in violation of the 14th Amendment to the United States Constitution.

The district court overruled the motion to dismiss and strike the common law defenses. Hammond, then alleging that a remedy by appeal after final judgment would be wholly inadequate and the denial of a speedy remedy would be tantamount to a denial of justice, applied to this Court for an appropriate writ to overturn the district court's order. Counsel was heard ex parte and an alternative order to show cause was issued.

Defendants filed their answer and return. They alleged that even if petitioner's constitutional contentions were correct, we could not include farming within the Workmen's Compensation Act when the legislature excluded it and could only declare the entire act invalid and, further, they assert that the legislative classification is valid.

On the return day, counsel for all parties appeared by brief and in oral argument.

Since this proceeding involves provisions of Montana's Workmen's Compensation Act, we quote the statutes of that Act involved:

Section 92-201, R.C.M. 1947:

"Defenses excluded in personal injury action --negligence of employee---fellow servant---assumption of risk. In an action to recover damages for personal injuries sustained by an employee in the course of his employment, or for death resulting from personal injuries so sustained, it shall not be a defense:

"(1) That the employee was negligent, unless such negligence was willful;

"(2) That the injury was caused by the negligence of a fellow employee;

"(3) That the employee had assumed the risks inherent in, incident to, or arising out of his employment, or arising from the failure of the employer to provide and maintain a reasonably safe place to work, or reasonably safe tools or appliances."

Section 92-902, R.C.M. 1947:

"Defenses not excluded in personal injury action
against employer in nonhazardous occupation and
certain other occupations. The provisions of
section 92-201 shall not apply to actions to re-
cover damages for personal injuries sustained by
household and domestic servants or those employed
in farming, dairying, agricultural, viticultural,
and horticultural, stock or poultry raising, or
engaged in the operation and maintenance of steam
railroads conducting interstate commerce, or persons
whose employment is of a casual nature."

Section 92-301, R.C.M. 1947:

"Act applies to all inherently hazardous occupa-
tions as enumerated. This act is intended to apply
to all inherently hazardous works and occupations
within this state, and it is the intention to embrace
all thereof in the four following sections, and the
works and occupations enumerated in said sections
are hereby declared to be hazardous, and any employer
having any workmen engaged in any of the hazardous
works or occupations herein listed shall be con-
sidered as an employer engaged in hazardous works
and occupations as to all his employees."

Sections 92-302, 92-303, 92-304 and 92-305 enumerate the

occupations which are expressly declared to be hazardous.

Section 92-306, R.C.M. 1947:

"Hazardous occupations not enumerated or hereafter
arising. If there be or arise any hazardous occupation
or work other than hereinbefore enumerated, it shall
come under this act and its terms, conditions and pro-
visions as fully and completely as if hereinbefore
enumerated. The enumeration of certain works and occupa-
tions as hazardous shall not exclude from the provisions
of this act any other occupation actually hazardous,
whether enumerated or not. All other works and occupa-
tions hazardous in their nature shall be included within
the terms of this act. No employment or occupation shall
be excluded from the benefits of this act as a hazardous
occupation because it is not of the same class as other
occupations described as hazardous in this statute."

Petitioner states that the issue here is whether or not the

exemption of employees of those engaged in farming, agriculture

or stock raising is an arbitrary and unreasonable one. Admitted

by petitioner is the fact that the only authority is to the effect

that the exclusion of farm laborers from the Workmen's Compensation

Act coverage is not an arbitrary classification. The United

States Supreme Court considered this exclusion in Middleton v.

Texas Power & Light Co., 249 U.S. 152, 63 L.Ed. 527, 39 S.Ct.

227. In its opinion, the court stated that in excluding farm

laborers the legislature might consider that the risks inherent in those occupations were specially patent, simple, and familiar. Middleton cited and relied upon the authority of New York Central Ry. Co. v. White, 243 U.S. 188, 61 L.Ed. 667, 677, 37 S.Ct. 247, which involved an employee of a railroad, and in its opinion the Court there stated:

> "This objection under the 'equal protection' clause is not pressed. The only apparent basis for it is in the exclusion of farm laborers and domestic servants from the scheme. But, manifestly, this cannot be judicially declared to be an arbitrary classification, since it reasonably may be considered patent, simple and familiar." (Emphasis supplied)

Petitioner contends that White never considered the issues here presented head-on, but only obliquely, and used the terms "patent, simple and familiar" as the basis for justifying the exclusion of farm and ranch employees from coverage, and then asserts that this Court should decide whether or not farm and ranch work in Montana today is "patent, simple and familiar" and thus distinguishable from other industrial employments, and secondly, is farm and ranch work in fact hazardous?

However before we enter into any discussion of these contentions, we note that petitioner is aware of the rule, appropriate here, and stated in Madden v. Kentucky, 309 U.S. 83, 84 L.Ed. 590, 593, 60 S.Ct. 406:

> "Since the members of a legislature necessarily enjoy a familiarity with local conditions which this court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes. The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it."

It is well to bear in mind what this Court stated back in 1919 in Shea v. North-Butte Min. Co., 55 Mont. 522, 528, 179 P. 499, with reference to the then new Workmen's Compensation Act. Mr. Chief Justice Brantly, speaking for a unanimous court, stated:

"The causes, from a historical point of view, impelling the enactment of Workmen's Compensation Laws, and the object to be served by them, have heretofore been stated somewhat at length by this court. (Cunningham v. Northwestern Improvement Co., 44 Mont. 180, 119 Pac. 554; Lewis & Clark County v. Industrial Accident Board, 52 Mont. 6, L.R.A. 1916D, 628, 155 Pac. 268.) It is not necessary to restate them. It is sufficient for present purposes to call to mind that the object sought was to substitute for the imperfect and economically wasteful common-law system by private action by the injured employee for damages for negligent fault on the part of the employer, which, while attended with great delay and waste, compensated those employees only who were able to establish the proximate connection between the fault and the injury, a system by which every employee in a hazardous industry might receive compensation for any injury suffered by him arising out of and during the course of the employment, whether the employer should be at fault or not, except only when the injury should be caused by the willful act of the employee. In other words, the theory of such legislation is that loss occasioned by reason of injury to the employee shall not be borne by the employee alone--as it was under the common-law system-- but directly by the industry itself and indirectly by the public, just as is the deterioration of the buildings, machinery and other appliances necessary to enable the employer to carry on the particular industry.

"To every thinking person the object sought commends itself not only as wise from an economic point of view, but also as eminently just and humane. Such legislation, in whatever form it may provide compensation, has been formulated after the most patient study and investigation by our most eminent men in professional and industrial walks of life, in order to avoid such obstructions or limitations as might be encountered under our written constitutions. A persistent enlightened public opinion has brought about the enactment of such laws in a great number of the states of the Union. Some of them are elective, while others are compulsory; and though the validity of many--perhaps all--of them has been challenged on almost every possible constitutional ground, they have generally been upheld. Our own statute is elective. While it has been criticised on the ground that the schedule of rates of compensation provided for by it is not sufficiently liberal and also on the ground that it makes an unwise and unjust discrimination against the dependents of aliens, yet that it operates more justly and more satisfactorily than the old system is demonstrated by the fact that as soon as it became operative, on July 1, 1915, the great body of employers as well as of employees in the various industries in the state accepted its provisions and have since been subject to them, as administered by the Industrial Accident Board created by the Act for that purpose. Under these circumstances, the rule that an Act of the legislature will not be declared invalid because it is repugnant to some provision of the Constitution unless its invalidity is made to appear beyond a reasonable doubt, applies with peculiar force." (Emphasis supplied)

- 6 -

It now becomes incumbent upon petitioner in attacking these provisions of the Workmen's Compensation Act to "negative every conceivable basis which might support it." as the United States Supreme Court stated, or to show the Act's invalidity beyond a reasonable doubt, as this Court stated.

This Court has repeatedly upheld the right of the Montana Legislature to create classifications for the purpose of legislative regulation. In doing so, we have always accorded a presumption of constitutionality where legislative classifications have been questioned and have thus presumed that such classifications are reasonable unless the party challenging the statute makes a clear affirmative showing to the contrary.

These principles were recently restated in Calvert v. City of Great Falls, 154 Mont. 213, 218, 462 P.2d 182, wherein we rejected a claim that a compulsory annexation statute violated the Fourteenth Amendment or Art. V, Sec. 26, of the Montana Constitution because it contained exemptions for industrial enterprises, golf courses, aircraft landing fields, and other specific enterprises. We stated:

> "The appellants' attack here on the constitutionality of the act as being 'class legislation' must overcome the presumption of constitutionality. In this state the presumption of constitutionality becomes specific when the claim of 'class legislation' is raised for much of our legislation in the field of property law imposes distinctions and classifications. These distinctions and classifications have been upheld whenever found to be reasonable and to operate equally upon every person or thing in a given class. State ex rel. Redman v. Meyers, 65 Mont. 124, 128, 210 P. 1064; State ex rel. Morgan v. White (Ret.Sys.), 136 Mont. 470, 348 P.2d 991. * * *
>
> "'What a court may think as to the wisdom or expediency of the legislation is beside the question and does not go to the constitutionality of the statute. We must assume that the Legislature was in a position and had the power to pass upon the wisdom of the enactment, and in the absence of an affirmative showing that there was no valid reason behind the classification, we are powerless to disturb it.'"

There are many other cases decided by this Court, which express the same principles. While the United States Supreme Court used the language "specially patent, simple and familiar"

- 7 -

in describing the risks borne in agricultural employment, it does not follow that our legislature based its decisions upon such considerations. Our legislature might have concluded to exclude farming operations because they were hazardous enough that the cost of coverage to the farmer would be an unnecessary and unreasonable burden, particularly since the legislature may not have believed that conditions of farm employment generally were similar to those of the industries the Act did cover.

Speculating further, one could as well conclude that the legislature excluded coverage of farmers on the basis, for example, that a great majority of Montana farmers employ too few people to justify the cost and administrative expense required to comply with the Act; that most farm employees are too seasonal or casual to require coverage; or, that Montana's farmers should not be put at a competitive disadvantage since most other states also exclude agriculture. Petitioner is dealing with only one factor, patency of the risk, but his burden is to negative every conceivable basis which might support the legislative action.

This burden he has not borne and we must assume, as we stated in Calvert, that the legislature was in a position and had the power to pass upon the wisdom of the enactment.

In addition, in Montana we have a long line of cases holding that constitutional questions will not be determined unless their determination is essential to the disposition of the case. See Application of Baker Sales Barn,Inc., 140 Mont. 1, 367 P.2d 775; Yellowstone Bank v. Board of Equalization, 137 Mont.198, 351 P.2d 904, and cases cited therein.

The relief sought by petitioner is denied and this proceeding is ordered dismissed.

Chief Justice

We Concur:

_John Conway Harrison_

_Wesley Castles_

Associate Justices.

---

Mr. Justice Haswell and Mr. Justice Daly specially concurring:

We concur in the result reached by the majority, but on procedural rather than constitutional grounds. In our opinion, no constitutional issue is properly before the Court in this proceeding.

In our view, this Court should exercise judicial restraint in reaching and deciding the constitutionality of legislative acts, particularly where, as here, no brief or oral argument has been presented by any public official or agency but only by private individuals. Under such circumstances where a case can be decided on nonconstitutional grounds, this Court should do so.

The general principle of declining unnecessary decisions on the constitutionality of legislative enactments and the reasons therefor is concisely summarized in 16 Am.Jur.2d, Constitutional Law, § 111, p. 298:

> "It has been stated that the invariable practice of the courts is never to consider the constitutionality of state legislation unless it is imperatively required.
>
> "The principle of avoiding constitutional questions has been described as one which was conceived out of considerations of sound judicial administration, and which has become a traditional policy of American courts. Moreover it is in accord with the principle of separation of powers of government."

A long line of Montana decisions extending back to the turn of the century supports this principle. State v. King, 28 Mont. 268, 72 P. 657; Sanden v. N.P.Ry. Co., 39 Mont. 209, 102 P. 145; Potter v. Furnish, 46 Mont. 391, 128 P. 542; State v. Rocky Mtn. Elevator Co., 52 Mont. 487, 158 P. 818; State ex rel. Toomey v.

State Bd. of Examiners, 74 Mont. 1, 238 P. 316; Missoula Trust & Savings Bank v. N.P.Ry. Co., 76 Mont. 201, 245 P. 949; In re Bank's Estate, 80 Mont. 159, 260 P. 128; Durocher v. Myers, 84 Mont. 225, 274 P. 1062; Yale Oil Corp. v. Plentywood Farmers' Oil Co., 98 Mont. 582, 41 P.2d 10; In re Clark's Estate, 105 Mont. 401, 74 P.2d 401, 114 A.L.R. 496; Montana State Board of Examiners in Photography v. Keller, 120 Mont. 364, 185 P.2d 503; Dickey v. Bd. of Com'rs, 121 Mont. 223, 191 P.2d 315; Monarch Mining Co. v. State Highway Comm., 128 Mont. 65, 270 P.2d 738; State ex rel. Burns v. Lacklen, 129 Mont. 243, 284 P.2d 998; Yellowstone Bank v. State Board of Equalization, 137 Mont. 198, 351 P.2d 904; Application of Baker Sales Barn, 140 Mont. 1, 367 P.2d 775; State ex rel. Konen v. City of Butte, 144 Mont. 95, 394 P.2d 753.

The majority note this principle but ignore it, sweeping aside the foregoing precedent to reach the constitutional issue. In our view, the instant case can be decided on procedural grounds. Here, the district court denied petitioner's motion to dismiss and to strike two common-law defenses from defendants' answer. This denial is not an appealable order under Rule 1, M.R.App. Civ.P., although it is reviewable on appeal from a final judgment under Rule 2, M.R.App.Civ.P. Any review of this interlocutory order at this time, whether by appeal or by extraordinary writ, is premature and unwarranted. Petitioner's rights have not been finally concluded by the order complained of, and petitioner may ultimately prevail regardless of the district court's order or the constitutionality of the statute. If judgment is eventually rendered against him, his remedy by appeal is plain, speedy, and adequate precluding any premature review at this time by extraordinary writ involving constitutional issues.

For these reasons we concur in the result, but not with the grounds, of the majority opinion.

_____

_____
Associate Justices.